UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED,<br><br>Defendants. | Case No. 1:26-cv-00050 (MKV) (RWL) |

**MEMORANDUM OF LAW IN SUPPORT OF DANIEL ENRIQUE-SARANO'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................................... 1

SUMMARY OF THE ACTION ....................................................................................................... 3

ARGUMENT ...................................................................................................................................... 5

I.     Sarano Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff ........... 5

     A.     The PSLRA Standard for Appointing Lead Plaintiff............................................ 5

     B.     Sarano's Motion Is Timely ................................................................................. 7

     C.     Sarano Has a Substantial Financial Interest............................................................ 7

     D.     Sarano Satisfies the Typicality and Adequacy Requirements of Rule 23 .............. 9

II.     Sarano's Selection of Wolf Popper to Serve as Lead Counsel Should Be Approved ...... 11

CONCLUSION................................................................................................................................... 13

WORD COUNT CERTIFICATION ............................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Bristol Cnty. Ret. Sys. v. QuidelOrtho Corp.*,
   No. 24-cv-2804 (MKV),
   2024 U.S. Dist. LEXIS 227121 (S.D.N.Y. Dec. 16, 2024) .................................................. 6, 10

*Hoare v. Oddity Tech. Ltd.*,
   No. 1:24-CV-06571 (MMG),
   2024 U.S. Dist. LEXIS 220596 (S.D.N.Y. Dec. 5, 2024) ................................................. passim

*Martinek v. AmTrust Financial Services, Inc.*,
   No. 19-cv-08030-KPF,
   2022 U.S. Dist. LEXIS 209097 (S.D.N.Y. Nov. 16, 2022)...................................................... 12

*Martinek v. AmTrust Financial Services, Inc.*,
   No. 19-cv-08030-KPF, ECF No. 111 (Final Judgment) (S.D.N.Y. Nov. 16, 2022) ............... 11

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996) ................................................................................ 8

*Pahlkotter v. Selectquote, Inc.*,
   No. 1:25-cv-06620 (JLR),
   2025 U.S. Dist. LEXIS 216558 (S.D.N.Y. Nov. 3, 2025)........................................................ 5

*Radtke v. Regeneron Pharms., Inc.*,
   No. 1:25-cv-145 (MKV),
   2025 U.S. Dist. LEXIS 131568 (S.D.N.Y. July 10, 2025) (Vyskocil, J.) ...................... 6, 10, 11

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
   Nos. 1:22-cv-06978 & 1:22-cv-07988 (MKV),
   2023 U.S. Dist. LEXIS 139195 (S.D.N.Y. Aug. 9, 2023) (Vyskocil, J.) ........................ 7, 8, 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................. 10

**Statutes**

15 U.S.C. § 77k................................................................................................................ 1, 2, 9

15 U.S.C. § 77o....................................................................................................................... 1

15 U.S.C. § 77z................................................................................................................ passim

15 U.S.C. § 78j(b) ................................................................................................................... 1

15 U.S.C. § 78t(a) ................................................................................................................... 1

15 U.S.C. § 78u-4 ............................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23(a)(3)................................................................................................. 10

Fed. R. Civ. P. 23(a)(4)................................................................................................. 10

**Regulations**

17 C.F.R. § 240.10b-5........................................................................................................ 1

Movant Daniel Enrique-Sarano ("Sarano") respectfully submits this Memorandum of Law in support of his motion for appointment as Lead Plaintiff and approval of his selection of Wolf Popper LLP as Lead Counsel.

## PRELIMINARY STATEMENT

This case is a securities class action (the "Action") alleging that Fermi Inc. ("Fermi" or the "Company"), certain of its executive officers and directors, and the underwriters of the Company's initial public offering ("IPO" or the "Offering") (collectively, "Defendants"), violated Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k and 77o, and that Fermi, its CEO Toby Neugebauer, and its CFO Miles Everson (with Neugebauer, "Individual Defendants"), violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities & Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Action is brought on behalf of a proposed "Class" of persons and entities that purchased or otherwise acquired Fermi: (a) common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's October 2025 [IPO]; and/or (b) securities between October 1, 2025 and December 11, 2025, inclusive (the "Class Period"). [¶ 1.][1]

The Private Securities Litigation Reform Act of 1995 ("PSLRA") instructs that in a class action alleging violations of the Securities Act or the Exchange Act, the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff on behalf of the proposed Class in the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i)|. The PSLRA provides that the Court

---

[1] Unless otherwise stated, citations to "¶_" are to the paragraphs of the Class Action Complaint for Violations of the Federal Securities Laws filed in the Action ("Complaint," ECF No. 1).

should adopt a rebuttable presumption that the "most adequate plaintiff" is the movant who made a timely request, has the "largest financial interest" in the relief sought by the Class, and has made a *prima facie* showing of typicality and adequacy under Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Sarano respectfully submits that he is the most adequate plaintiff and should be appointed Lead Plaintiff. As discussed herein, Sarano incurred an out-of-pocket trading loss of at least $31,934.50 related to his transactions in Fermi securities during the Class Period, and suffered statutory damages calculated under Section 11(e) of the Securities Act of $30,910. *See* Ruthizer Decl. Ex. 3.[2] Sarano also meets the typicality and adequacy requirements of Rule 23 because: (i) his claims arise from the same course of events as those of the other Class members; (ii) he relies on similar legal theories to prove Defendants' liability; and (iii) he has retained experienced counsel and is committed to vigorously prosecuting the Action.

Finally, pursuant to the PSLRA, Sarano respectfully requests that the Court approve the selection of Wolf Popper as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Wolf Popper is a nationally recognized securities class action firm with the expertise and resources necessary to handle litigation of this complexity and scale. Accordingly, Sarano respectfully requests that the Court appoint him as Lead Plaintiff for the Class and approve his choice of Lead Counsel.

---

[2] Declaration of Joshua W. Ruthizer in Support of Daniel Enrique-Sarano's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Ruthizer Declaration" or "Ruthizer Decl.").

## SUMMARY OF THE ACTION

Fermi purports to be an energy and artificial intelligence ("AI") infrastructure company structured as a real estate investment trust ("REIT"), which aims to build multiple large-scale nuclear reactors and create its own network of large, grid-independent data centers powered by a mix of nuclear, natural gas, solar, and battery energy, targeted at artificial intelligence. ¶ 2.  The Company has no operating history or historical revenue.  *Id*.  Its first announced project, "Project Matador," purportedly aims to create the world's largest private energy campus, providing dedicated power for AI workloads.  *Id*.  Fermi's common stock trades on the NASDAQ under the ticker symbol "FRMI."  ¶ 14.

On October 1, 2025, the Company filed its prospectus on Form 424B4 with the SEC. In the IPO, Fermi sold 37,375,000 shares of common stock at a price of $21.00 per share, receiving net proceeds of approximately $745.7 million.  ¶ 3.  The Complaint alleges that the Registration Statement for the IPO contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein, in violation of Sections 11 and 15 of the Securities Act. *See* ¶¶ 37-46, 75-88. For example, the Complaint alleges that the Registration Statement touted robust tenant demand for Project Matador, including that the Company had entered into a letter of intent with an investment grade-rated first tenant (the "First Tenant") to lease a portion of the Project Matador site, and that the Company was "in advanced discussions with a select group of foundational anchor tenants."  ¶ 44.  The Registration Statement further represented that, upon entering into a lease agreement, "tenant prepayments and the other sources of liquidity" were expected to "satisfy 100% of the funding for long lead-time items."  ¶ 41.

The Complaint also alleges that Fermi and the Individual Defendants made additional untrue statements of material fact or omitted to state material facts necessary in order to make the

3

statements made, in the light of the circumstances under which they were made, not misleading, during the Class Period, subsequent to the IPO, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. For example, on November 10, 2025, the Company issued a shareholder letter touting that Fermi and the First Tenant had entered into a $150 million Advance in Aid of Construction Agreement (the "AIAC") — an agreement that had in fact been quietly executed six days earlier on November 4, 2025 — "which establishes a cost reimbursement framework under which the tenant will fund a portion of shared infrastructure and utility systems in advance of occupancy." ¶¶ 48, 51. Also on November 10, 2025, the Company published its 3Q25 Investor Presentation, touting the Company's purported milestone achievements in connection with Project Matador's development, including the AIAC with the First Tenant as a significant advancement toward commercialization. ¶ 50.

Then, on November 12, 2025, the Company filed its 3Q25 Form 10-Q with the SEC — a formal, certified filing — which identified the AIAC as a key "principal source of liquidity," stating that the Company "executed a $150 million AIAC with the First Tenant," which would "fund a portion of shared infrastructure and utility systems in advance of occupancy." ¶ 51. The 3Q25 10-Q further represented that tenant prepayments were expected to provide a "significant portion" of the Company's liquidity, that they would "enhance early-stage liquidity and reduce reliance on dilutive equity or bridge financing," and that this approach was "designed to strengthen our balance sheet." *Id*.

The Complaint alleges that the Registration Statement (for the Securities Act claims) and the additional Class Period statements (for the Exchange Act claims) were materially false and misleading because the Registration Statement and/or Fermi and the Individual Defendants failed to disclose to investors that: (1) the Company overstated its tenant demand for its Project Matador

4

campus; (2) the extent to which Project Matador would rely on a single tenant's funding commitment to finance the construction of Project Matador; (3) there was a significant risk that that tenant would terminate its funding commitment; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. ¶¶ 7, 46, 53.

The Complaint alleges that the truth was revealed on December 12, 2025, before the market opened, when Fermi disclosed that the First Tenant had terminated the $150 million AIAC—and that no funds had ever been drawn under it. ¶ 54. The Company further disclosed that the exclusivity period under the letter of intent had expired on December 9, 2025, just days prior. *Id*. On this news, Fermi's stock price fell $5.16 per share, or 33.8%, from a closing price on December 11, 2025 of $15.25 per share to a closing price of $10.09 on December 12, 2025, on unusually heavy trading volume. *See* ¶ 55. On the date the Action was filed, Fermi common stock closed at $8.68 per share, a 59% decline from the $21.00 per share IPO price, and a 73% decline from the Class Period high price of $32.53 per share. *See* ¶¶ 6, 69.

## ARGUMENT

### I.    Sarano Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

#### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a procedure for appointing selecting a lead plaintiff in a class action arising under the Securities Act or the Exchange Act. *See* 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3). "As amended by the PSLRA, the relevant provisions of the Securities Act and the Exchange Act regarding the appointment of lead plaintiffs and the selection of lead counsel are identical." *Pahlkotter v. Selectquote, Inc.*, No. 1:25-cv-06620 (JLR), 2025 U.S. Dist. LEXIS 216558, at *2 n.1 (S.D.N.Y. Nov. 3, 2025).

First, the PSLRA, specifies that notice of the action must be given to the proposed Class and motions for appointment as lead plaintiff should be made within 60 days after that notice is given:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff" as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i).  The PSLRA provides that the Court adopt a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); *see also Bristol Cnty. Ret. Sys. v. QuidelOrtho Corp.*, No. 24-cv-2804 (MKV), 2024 U.S. Dist. LEXIS 227121, at *9 (S.D.N.Y. Dec. 16, 2024) (Vyskocil, J.); *Radtke v. Regeneron Pharms., Inc.*, No. 1:25-cv-145 (MKV), 2025 U.S. Dist. LEXIS 131568, at *4–5 (S.D.N.Y. July 10, 2025) (Vyskocil, J.); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, Nos.

6

1:22-cv-06978 & 1:22-cv-07988 (MKV), 2023 U.S. Dist. LEXIS 139195, at *5–6 (S.D.N.Y. Aug. 9, 2023) (Vyskocil, J.).

Sarano respectfully submits that he is entitled to the most adequate plaintiff presumption and should be appointed Lead Plaintiff because he filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### B.      Sarano's Motion Is Timely

Sarano filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i), on January 5, 2026, the plaintiff in this Action caused notice regarding the pending nature of this case to be published on Business Wire, a widely-circulated, national, news wire service, informing investors of the March 6, 2026 deadline to seek appointment as lead plaintiff.  *See* ECF No. 5. Sarano filed his motion seeking appointment as Lead Plaintiff on March 6, 2026, and thus has satisfied this procedural requirement of the PSLRA.

### C.      Sarano Has a Substantial Financial Interest

The PSLRA states that the Court should award the most adequate plaintiff presumption to the movant who "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii).  The PSLRA does not specify a method to determine which lead plaintiff movant has the largest financial interest, and neither the Supreme Court nor the Second Circuit have specified a method for the calculation.  *See Hoare v. Oddity Tech. Ltd.*, No. 1:24-CV-06571 (MMG), 2024 U.S. Dist. LEXIS 220596, at *6 (S.D.N.Y. Dec. 5, 2024) (citations and quotations omitted).  However,

> [D]istrict courts throughout the Second Circuit generally consider four factors, called the Lax/Olsten factors, to evaluate the financial interest of prospective lead plaintiffs: "(1) the number of shares purchased during the class period; (2) the

number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."

*Id.* (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996)); *see also Stadium Capital*, 2023 U.S. Dist. LEXIS 139195, at *7.

Applying the *Lax/Olsten* factors to Sarano's transactions in Fermi securities during the October 1, 2025 to December 11, 2025 Class Period, Sarano (1) purchased 3,000 shares of Fermi common stock during the Class Period; (2) held all of those shares at the end of the Class Period (purchased 3,000 net shares); (3) expended $63,700 in net funds on his Class Period share purchases, and (4) suffered an out-of-pocket loss of $37,084.50.  Ruthizer Decl. Ex. 3.  In addition, Sarano sold 90 Fermi covered call option contracts (for 100 shares each) against his underlying common stock holdings, for total proceeds of $7,900, and subsequently covered 30 of those Fermi call option contracts during the Class Period by buying offsetting options for a total cost of $2,750. *Id.*  The remaining 60 covered call option contracts sold short expired worthless (*i.e.,* the strike price exceeded the market price on the option expiration date).  Sarano's strategy of selling calls against an underlying stock position is a common long strategy to generate additional income from stock ownership.  If the net $5,150 is applied to Sarano's financial interest, then his financial interest is reduced to $31,934.50.  *Id.*[3]

In addition, the Complaint alleges claims under Section 11 of the Securities Act. Damages under Section 11 are set by statute:

---

[3] The PSLRA provides that in a case alleging claims under the Exchange Act, damages "shall not exceed the difference between the purchase [price paid] by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market," or if the security is sold during that 90-day "look back" or "bounce back" period, the average trading price through the date of sale. 15 U.S.C. § 78u-4(e). In this case, the 90-day period will run through March 12, 2026. Sarano's financial interest calculation applies the mean trading price of Fermi common stock through the date of sale for the 2,000 shares sold during the look back period, and the mean trading price through March 6, 2025 of $9.13 per share for the 1,000 shares still retained.

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought…

15 U.S.C. § 77k(e).

Applying the Section 11(e) statutory formula, Sarano (1) purchased 3,000 shares of Fermi common stock at a total cost of $55,790 (the purchase prices of 2,000 shares purchased at prices above the $21.00 per share IPO price were lowered to $21.00 per share), (2) sold 2,000 shares before the Complaint was filed on January 5, 2026 for total proceeds of $16,200, and (3) held 1,000 shares of Fermi common stock on January 5, 2026 when the Complaint was filed. Assuming for purposes of this motion that the "value" of those 1,000 shares held on January 5, 2026 is the closing price of Fermi common stock on that date of $8.68 per share, then Sarano suffered statutory Section 11(e) damages of $30,910.  Ruthizer Decl. Ex. 3.  The statute does not provide for the offset of options trading, which would also be inappropriate with respect to options with strike prices above the IPO price.

Accordingly, Sarano satisfies the second requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

### D. Sarano Satisfies the Typicality and Adequacy Requirements of Rule 23

A prospective lead plaintiff must satisfy the requirements of Rule 23. At the lead plaintiff stage, "courts need only consider whether the prospective lead plaintiff satisfies the typicality and adequacy prongs of Rule 23." *Oddity Tech*, 2024 U.S. Dist. LEXIS 220596, at *7-8.

9

A lead plaintiff movant "makes a preliminary showing that its claims are typical [when] they arise from the same alleged course of events from which the other putative class members' claims and alleged injuries arise." *Radtke*, 2025 U.S. Dist. LEXIS 131568, at *6 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008)); *Bristol Cnty.*, 2024 U.S. Dist. LEXIS 227121, at *10 (same). During the Class Period, Sarano purchased or otherwise acquired Fermi securities in reliance on Defendants' false and misleading statements, and purchased Fermi common stock pursuant or traceable to the Registration Statement issued in connection with the Company's October 2025 IPO. Sarano suffered damages when the truth was revealed and under Section 11(e) of the Securities Act, and possesses claims against the Defendants under the federal securities laws. Because Sarano's claims arise from the same events and course of conduct as the Class's claims, he satisfies the typicality requirement of Rule 23(a)(3).

"A presumptive lead plaintiff is adequate if they (1) have no conflict of interest with the other members of the class, (2) have sufficient interest in the outcome of the case, and (3) have selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Oddity Tech*, 2024 U.S. Dist. LEXIS 220596, at *9; *see also Radtke*, 2025 U.S. Dist. LEXIS 131568, at *6–7; *Bristol Cnty.*, 2024 U.S. Dist. LEXIS 227121, at *10–11 (same); *Stadium Cap.*, 2023 U.S. Dist. LEXIS 139195, at *6–7 (same).. Sarano's claims are not antagonistic or in conflict with those of the Class. Sarano is not subject to any unique defenses. Sarano's financial interest also gives him a sufficient interest in the outcome of this case. Further, as described below, Sarano has retained Wolf Popper LLP to act as Lead Counsel, and Wolf Popper is experienced in securities litigation. Sarano therefore satisfies the adequacy requirement of Rule 23(a)(4).

In addition, Sarano has submitted a sworn certification, as required by the PSLRA, attesting to his willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition

10

and trial, if necessary. *See* Ruthizer Decl. Ex. 1. Sarano has also submitted a declaration attesting to, among other things, his understanding of the obligations of a Lead Plaintiff and commitment to zealously prosecute this litigation. *Id.* Ex. 2.

Because Sarano's claims are typical of those of the Class and because he will adequately represent the Class, he satisfies the third requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

## II.    Sarano's Selection of Wolf Popper to Serve as Lead Counsel Should Be Approved

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *Radke,* 2025 U.S. Dist. LEXIS 131568, at *6. "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Oddity Tech.*, 2024 U.S. Dist. LEXIS 220596, at *11.

Sarano has selected Wolf Popper to act as Lead Counsel, and respectfully request that the Court approve its selection. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Ruthizer Decl. Ex. 4. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), Judge Katherine Polk Failla of this Court appointed Wolf Popper to serve as lead counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, Judge Failla entered an order finally approving a $13 million cash settlement for the Martinek class. *Martinek*, ECF No. 111 (Final Judgment). Judge Failla also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and

11

securities class action litigation…." *Martinek*, 2022 U.S. Dist. LEXIS 209097, at \*4 (S.D.N.Y. Nov. 16, 2022).

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:08-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as lead plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Judge Pamela K. Chen of the Eastern District of New York entered an order approving the settlement. Judge Chen found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17. "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id.* at 22:5-18.

As a result of Wolf Popper's extensive experience in litigation involving issues similar to those raised in this action, it has the skill and knowledge to prosecute this action effectively and expeditiously. The Court may be assured that by approving the Sarano's selection of Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Sarano respectfully requests that this Court issue an Order

appointing him as Lead Plaintiff and approving Wolf Popper as Lead Counsel.

Dated: March 6, 2026
       New York, NY

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

*Attorneys for Movant Daniel Enrique-Sarano
and Proposed Lead Counsel for the Class*

13

## **WORD COUNT CERTIFICATION**

Pursuant to Southern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 3,917 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

/s/ *Joshua W. Ruthizer*
Joshua W. Ruthizer

14