**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>          vs.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED,<br><br>                                   Defendants. | No. 1:26-cv-00050-MKV<br><br>Judge Mary Kay Vyskocil<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

SUMMARY OF THE ACTION ................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.     NEW ENGLAND IRON WORKERS SHOULD BE APPOINTED LEAD
       PLAINTIFF .................................................................................................................... 4

       A.     The PSLRA Standard for Appointing Lead Plaintiff ............................................. 4

       B.     New England Iron Workers Is the "Most Adequate Plaintiff" .............................. 5

              1.     New England Iron Workers' Motion Is Timely ......................................... 5

              2.     New England Iron Workers Has a Substantial Financial Interest .............. 5

              3.     New England Iron Workers Satisfies Rule 23's Typicality and
                     Adequacy Requirements ............................................................................ 6

                     a.     New England Iron Workers' Claims Are Typical of Those of
                            the Class ......................................................................................... 6

                     b.     New England Iron Workers Satisfies the Adequacy
                            Requirement of Rule 23 ................................................................. 7

              4.     New England Iron Workers Is Precisely the Type of Lead Plaintiff
                     Congress Envisioned When It Passed the PSLRA ..................................... 8

II.    NEW ENGLAND IRON WORKERS' SELECTION OF LEAD COUNSEL
       MERITS APPROVAL ................................................................................................... 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bristol Cnty. Ret. Sys. v. QuidelOrtho Corp.*,
  2024 WL 5118417 (S.D.N.Y. Dec. 16, 2024) ....................................................6, 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...........................................................................9

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
  2020 WL 2614703 (S.D.N.Y. May 22, 2020) ............................................8

*Pompano Beach Police & Firefighters' Ret. Sys. v. Olo Inc.*,
  2022 WL 17832556 (S.D.N.Y. Dec. 21, 2022) ......................................6, 7

*Shapiro v. TG Therapeutics, Inc.*,
  2022 WL 16555585 (S.D.N.Y. Oct. 31, 2022)............................2, 3, 6, 8

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ............................................8

**Rules & Statutes**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* ............................................................................ *passim*

15 U.S.C. §§77z-1, *et seq.* ...........................................................................1

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04-cv-08141 (S.D.N.Y.)...........................................................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  No. 08-md-01963 (S.D.N.Y.) .......................................................................9

*In re Fannie Mae 2008 Sec. Litig.*,
  No. 08-cv-07831 (S.D.N.Y.)...........................................................................9

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
  No. 09-md-02027 (S.D.N.Y.) .......................................................................9

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ......................2, 8, 9

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ..................................................2

Proposed Lead Plaintiff Iron Workers District Council of New England Pension Fund ("New England Iron Workers") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (1) appointing New England Iron Workers as Lead Plaintiff in the above-captioned "Action"; (2) approving New England Iron Workers' selection of Labaton Keller Sucharow LLP ("Labaton") as Lead Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned securities class action (the "Action") alleges that Fermi Inc. ("Fermi" or the "Company"), along with certain of its executive officers, directors, and underwriters (together, "Defendants"), violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) and SEC Rule 10b-5 promulgated thereunder, and the Securities Act, 15 U.S.C. §§77z-1, *et seq.*[1]  The Action has been brought on behalf of persons and entities that purchased or otherwise acquired (i) Fermi common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's October 2025 initial public offering ("IPO" or the "Offering"), and/or (ii) Fermi securities between October 1, 2025 and December 11, 2025, inclusive (the "Class Period").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court must determine which movant

---

[1] The modifications to the Securities Act and the Exchange Act under the PSLRA are identical with regard to appointing a lead plaintiff, and therefore, for ease of reference, only the Exchange Act is cited throughout

has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made *a prima facie* showing that it is a typical and adequate class representative under Federal Rule of Civil Procedure 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

New England Iron Workers respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As discussed herein, New England Iron Workers incurred ***$120,216*** in losses as calculated on a last-in-first-out ("LIFO") basis because of its transactions in Fermi securities during the Class Period.[2]  In light of this significant loss, New England Iron Workers has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, New England Iron Workers also meets the typicality and adequacy requirements of Rule 23 because: (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action.  Furthermore, the PSLRA's legislative history shows that large, sophisticated institutional investors like New England Iron Workers are precisely the type of investor that Congress intended to empower to lead securities class action litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Shapiro v. TG*

---

[2] A copy of the Certification of New England Iron Workers ("Certification") is attached as Exhibit A to the Declaration of Francis P. McConville ("McConville Decl.").  The Certification sets forth all of New England Iron Workers' relevant transactions in Fermi securities during the Class Period.  In addition, a table reflecting the calculation of financial losses sustained by New England Iron Workers on its relevant Class Period transactions in Fermi securities ("Loss Analysis") is attached as Exhibit B to the McConville Decl.

*Therapeutics, Inc.*, 2022 WL 16555585, at *6 (S.D.N.Y. Oct. 31, 2022) (finding that a lead plaintiff movant which was "an institutional investor with significant resources, expertise, and experience . . . is precisely the sort of plaintiff that Congress intended to empower when it enacted the PSLRA").

Finally, pursuant to the PSLRA, New England Iron Workers respectfully requests that the Court approve the selection of Labaton as Lead Counsel for the Class.  See 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  Labaton is a nationally recognized securities class action firm that has achieved significant recoveries for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, New England Iron Workers respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Lead Counsel.

## SUMMARY OF THE ACTION

Fermi is an energy and artificial intelligence ("AI") infrastructure company structured as a real estate investment trust ("REIT").  In October 2025, Fermi sold tens of millions of shares at a price of $21 as part of its IPO.  Fermi's common stock trades on the NASDAQ under the ticker symbol "FRMI."

The Action alleges that Defendants misled investors by overstating demand for certain of its properties, failing to disclose its financial reliance on a single tenant, and failing to disclose the risk that this single tenant would withdraw its financial commitment.  Investors learned part of the truth behind Defendants' misrepresentations on December 12, 2025 when Defendants revealed that a major tenant for one of Fermi's critical projects had terminated its agreement with the Company.  On this news, the Company's stock price fell $5.16 per share, or 33.8%, to close at $10.09 on December 12, 2025.

3

As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's stock, New England Iron Workers and the Class have suffered significant damages.

**ARGUMENT**

## I.   NEW ENGLAND IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

New England Iron Workers respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.   The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).   First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).

4

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as lead plaintiff, (ii) has the largest financial interest in the relief sought by the class, and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Under the framework established by the PSLRA, New England Iron Workers is the most adequate plaintiff and should be appointed Lead Plaintiff.

### B.    New England Iron Workers Is the "Most Adequate Plaintiff"

#### 1.    New England Iron Workers' Motion Is Timely

New England Iron Workers filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in this Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, news wire service, on January 5, 2026, informing investors of the March 6, 2026 deadline to seek appointment as lead plaintiff. *See* Notice, McConville Decl., Ex. C. New England Iron Workers filed this motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2.    New England Iron Workers Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

During the Class Period, New England Iron Workers purchased 7,340 total Fermi shares, purchased 7,340 net shares, made $187,218 in net expenditures on its Class Period purchases, and

5

incurred a substantial loss of $120,216 on its transactions in Fermi securities on a LIFO basis during the Class Period. *See* Loss Analysis, McConville Decl., Ex. B; *see also TG Therapeutics, Inc.*, 2022 WL 16555585, at *2 (listing the factors relevant to determining which movant has the greatest financial interest). Accordingly, New England Iron Workers has a substantial financial interest as a qualified movant seeking lead plaintiff status and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. New England Iron Workers Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See Pompano Beach Police & Firefighters' Ret. Sys. v. Olo Inc.*, 2022 WL 17832556, at *1 (S.D.N.Y. Dec. 21, 2022) (citation omitted). "At the lead plaintiff stage, 'a lead plaintiff movant need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *TG Therapeutics, Inc.*, 2022 WL 16555585, at *2; *see also Bristol Cnty. Ret. Sys. v. QuidelOrtho Corp.*, 2024 WL 5118417, at *3 (S.D.N.Y. Dec. 16, 2024). Here, New England Iron Workers satisfies both requirements.

### a. New England Iron Workers' Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when "a plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all class members." *Olo Inc.*, 2022 WL 17832556, at *2. New England Iron Workers' claims are typical of the claims asserted by the proposed Class. Like all members of the Class, New England Iron Workers alleges that Defendants made material misstatements and omissions regarding the Company's business and operations. During the Class Period, New England Iron Workers, as did all of the members

6

of the Class, purchased or otherwise acquired Fermi securities in reliance on Defendants' false and misleading statements. Thus, the typicality requirement is satisfied.

### b. New England Iron Workers Satisfies the Adequacy Requirement of Rule 23

New England Iron Workers likewise satisfies the adequacy requirement of Rule 23. "Rule 23's adequacy requirement . . . is satisfied where: '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Olo Inc.*, 2022 WL 17832556, at *2. (internal quotation marks and citation omitted).

New England Iron Workers will fairly and adequately represent the interests of the proposed Class. New England Iron Workers unquestionably has resources sufficient to pursue the above-captioned action to a successful conclusion. New England Iron Workers has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section II, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Furthermore, no antagonism exists between New England Iron Workers' interests and those of the absent Class members; rather, the interests of New England Iron Workers and Class members are squarely aligned. New England Iron Workers suffered substantial losses due to Defendants' alleged misconduct and, therefore, has sufficient interest in the outcome of this case to ensure vigorous prosecution of this action. Finally, there is no proof that New England Iron Workers is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, New England Iron Workers satisfies the adequacy requirement.

### 4.    New England Iron Workers Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, New England Iron Workers—a large, sophisticated institutional investor with experience successfully serving as court-appointed Lead Plaintiff under the PSLRA—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts, including Courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as Lead Plaintiff in securities class actions. *See, e.g., TG Therapeutics, Inc.*, 2022 WL 16555585, at *6 (finding that a lead plaintiff movant which was "an institutional investor with significant resources, expertise, and experience . . . is precisely the sort of plaintiff that Congress intended to empower when it enacted the PSLRA"); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (finding that an institutional movant is "the kind of sophisticated institutional investor favored by the PSLRA"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *6 (S.D.N.Y. Jan. 15, 2021) (noting that the "presumption in favor of large institutional investors [is] a result that Congress both considered and intended").

8

Accordingly, New England Iron Workers has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

## II.    NEW ENGLAND IRON WORKERS' SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig*., 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, New England Iron Workers has selected Labaton to represent the Class as Lead Counsel. New England Iron Workers selected Labaton as its proposed Lead Counsel after reviewing the firm's investigation into the merits of this Action and Labaton's experience litigating similar lawsuits in this Court and in courts across the country. Indeed, Labaton has excelled as lead counsel in numerous actions on behalf of defrauded investors. For example, Labaton served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-08141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-01963 (S.D.N.Y.), in which the firm served as co-lead counsel. Labaton also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-02027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-07831 (S.D.N.Y.). Labaton presently

9

serves as lead or co-lead counsel in several significant investor class actions.  *See* Labaton Firm Resume, McConville Decl., Ex. D.

In light of the foregoing, the Court should approve New England Iron Workers' selection of Labaton as Lead Counsel for the Class.  *See QuidelOrtho Corp.,* 2024 WL 5118417, at *3 (approving a lead plaintiff's selection of Labaton as lead counsel because the firm "is an established firm with extensive experience and prior success in securities litigation").  The Court can be assured that, by approving New England Iron Workers' choice of counsel, the Class will receive the highest caliber of representation.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, New England Iron Workers respectfully requests the Court grant its Motion and enter an Order: (1) appointing New England Iron Workers as Lead Plaintiff; (2) approving New England Iron Workers' selection of Labaton as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.

DATED: March 6, 2026

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

10

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Movant the Pension Funds certifies

that this Memorandum of Law in support of the Pension Funds Motion contains 3,020 words and

is in compliance with the word-count limitation of Local Civil Rule 7.1(c).

Dated: March 6, 2026                                    *s/ Francis P. McConville*
                                                        Francis P. McConville
                                                        **LABATON KELLER SUCHAROW
                                                        LLP**
                                                        140 Broadway
                                                        New York, New York 10005
                                                        Telephone: (212) 907-0700
                                                        Facsimile: (212) 818-0477
                                                        fmcconville@labaton.com

11