UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of all others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED,<br><br>Defendants. | Case No.  1:26-cv-00050-MKV |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF STAN POLING AND WESLEY LANGLAND FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

     I.     POLING AND LANGLAND SHOULD BE APPOINTED
           CO-LEAD PLAINTIFFS.................................................................................... 4

           A.     Poling and Langland Are Willing to Serve as Class Representatives......... 5

           B.     Poling and Langland Have the "Largest Financial Interest"...................... 6

           C.     Poling and Langland Otherwise Satisfy the Requirements of Rule 23....... 7

           D.     Poling and Langland Will Fairly and Adequately Represent the
                   Interests of the Class and Are Not Subject to Unique Defenses ................11

     II.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD
           BE APPROVED................................................................................................ 12

CONCLUSION...................................................................................................................... 13

CERTIFICATE OF WORD COUNT...................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Bird Global, Inc.*,
No. 2:22-cv-8406-ODW, 2023 WL 3814040 (C.D. Cal. June 2, 2023) .....................................6

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .................................8

*Barnet v. Elan Corp.*,
PLC, 236 F.R.D. 158 (S.D.N.Y. 2005) ..................................................................................10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ...........................................................................................8

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018).............................6

*China Agritech v. Resh*,
584 U.S. 732 (2018)................................................................................................................10

*Colwell v. Exicure Inc.*,
No. 21-cv-6637, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023) .................................................6

*Dookeran v. XunleiLtd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................9

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).................10, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................6, 10

*In re Comverse Tech. Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..............6, 12, 13

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)....................................................................................................8

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ....................................................................................................10

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ................................................................12

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................6

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ....................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................8

*In re Petrobras Securities Litigation*,
   No. 14-cv-09662 (S.D.N.Y.)...................................................................12

*Janbay v.Canadian Solar, Inc.*,
   272 F.R.D. 112 (S.D.N.Y. 2010) ..............................................................8

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................12

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................6

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997).....................................6

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   No. 2:11-cv-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) .................................11

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ......................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   No. 2:13-cv-6731-TON, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...........................11

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................10

**Statutes**

15 U.S.C. § 77z-1.................................................................... *passim*

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

Securities Act of 1933.................................................................................................1, 8

Securities Exchange Act of 1934.................................................................................1, 8

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

Stan Poling ("Poling") and Wesley Langland ("Langland")[1] respectfully submit this memorandum of law in support of their motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Poling and Langland as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of persons and entities that purchased or otherwise acquired Fermi Inc. ("Fermi" or the "Company") common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's October 2025 initial public offering ("IPO" or the "Offering"), and/or Fermi securities between October 1, 2025 and December 11, 2025, inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") disseminated a materially false or misleading registration statement to investors in connection with Fermi's IPO in violation of the Securities Act, as well as defrauded investors in violation of the Exchange Act. Fermi investors, including Poling and Langland, incurred significant losses following the disclosures of Defendants' alleged wrongful conduct, which caused Fermi's share price to fall sharply, damaging Poling, Langland, and other Fermi investors.

---

[1] Langland pursues claims in this litigation both on his own behalf and on behalf of his wife, Bonnie Langland (together with Langland, the "Langland Family"), from whom he has received a valid assignment of those claims. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).  Pursuant and/or traceable to the Registration Statement issued in connection with the Company's October 2025 IPO, Poling and the Langland Family collectively: (1) purchased or otherwise acquired 9,500 shares of Fermi common stock; (2) purchased or otherwise acquired 9,500 net shares of Fermi common stock; (3) expended $151,787 in net funds on Fermi common stock; and (4) as a result of Defendants' alleged wrongful conduct, incurred losses of approximately $49,827.  *See* Hood Decl., Ex. B.  During the Class Period, Poling and the Langland Family collectively: (1) purchased or otherwise acquired 4,500 shares of Fermi common stock; (2) purchased or otherwise acquired 4,500 net shares of Fermi common stock; (3) expended $109,437 in net funds on Fermi common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $68,269.  *See id.* Accordingly, Poling and Langland believe that they have the largest financial interest in the relief sought in this Action.  Beyond their considerable financial interest, Poling and Langland also meet the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Poling and Langland have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Poling and Langland respectfully request that the Court enter an Order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint, Fermi purports to be an energy and artificial intelligence ("AI") infrastructure company.  The Company is structured as a real estate investment trust ("REIT").  The Company allegedly aims to build multiple, large scale nuclear reactors and create its own network of large, grid-independent data centers, powered by a mix of nuclear, natural gas, solar, and battery energy, targeted at AI.  The Company has no operating history or historical revenue.  The Company's first project, Project Matador, purportedly aims to create the world's largest private energy campus, providing dedicated power for AI workloads.

On October 1, 2025, the Company filed its prospectus on Form 424B4 with the U.S. Securities and Exchange Commission, which forms part of the Registration Statement.  In the IPO, the Company sold 37,375,000 shares of common stock at a price of $21.00 per share.  The Company received net proceeds of approximately $745.7 million from the Offering.  The proceeds from the IPO were purportedly to be used for general corporate purposes, including funding procurement and installation of long lead-time items and construction of long lead-time items, and the acquisition of, or investment in, technologies, solutions, or businesses that complement the business.

On December 12, 2025, before the market opened, Fermi revealed the first tenant for the Company's anticipated Project Matador AI campus had terminated its $150 million Advance in Aid of Construction Agreement, which would have supplied construction costs for the facility.

On this news, the Company's stock price fell $5.16 per share, or 33.8%, to close at $10.09 on December 12, 2025, on unusually heavy trading volume.

3

By the commencement of this Action, Fermi stock has traded as low as $8.59 per share, a 59% decline from the $21.00 per share IPO price.

In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the Company overstated its tenant demand for its Project Matador campus; (2) the extent to which Project Matador would rely on a single tenant's funding commitment to finance the construction of Project Matador; (3) there was a significant risk that that tenant would terminate its funding commitment; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Poling, Langland, and other Class members have suffered significant losses and damages.

**ARGUMENT**

## I.    POLING AND LANGLAND SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Poling and Langland should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this Action to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead

4

plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

As set forth below, Poling and Langland satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A.    Poling and Langland Are Willing to Serve as Class Representatives

On January 5, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Sections 27(a)(3)(A)(i) and 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Fermi and other defendants, and advising investors in Fermi securities that they had 60 days from the date of the Notice's publication—*i.e.*, until March 6, 2026—to file a motion to be appointed as lead plaintiff. *See* Dkt. No. 5-1.

Poling and Langland have filed the instant motion pursuant to the Notice, and they have submitted sworn Certifications attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See* Hood Decl., Ex. C.

Accordingly, Poling and Langland satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### B.    Poling and Langland Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb).  To the best of their knowledge, Poling and Langland have the largest financial interest of any Fermi investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under the federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at*1 (S.D.N.Y. Nov. 13, 2017).  Of the *Lax* factors, courts in the Second Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *Colwell v. Exicure Inc.*, No. 21-cv-6637, 2023 WL 2572454, at *2–3 (N.D. Ill. Mar. 20, 2023); *Arias v. Bird Global, Inc.*, No. 2:22-cv-8406-ODW (AGRx), 2023 WL 3814040, at *4 (C.D. Cal. June 2, 2023); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech. Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6–8 (E.D.N.Y. Mar. 2, 2007).

Pursuant and/or traceable to the Registration Statement issued in connection with the Company's October 2025 IPO, Poling and the Langland Family collectively: (1) purchased or otherwise acquired 9,500 shares of Fermi common stock; (2) purchased or otherwise acquired 9,500 net shares of Fermi common stock; (3) expended $151,787 in net funds on Fermi common stock; and (4) as a result of Defendants' alleged wrongful conduct, incurred losses of approximately $49,827. *See* Hood Decl., Ex. B. During the Class Period, Poling and the Langland Family collectively: (1) purchased or otherwise acquired 4,500 shares of Fermi common stock; (2) purchased or otherwise acquired 4,500 net shares of Fermi common stock; (3) expended $109,437 in net funds on Fermi common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $68,269. *See id.* As such, Poling and Langland believe that they possess the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Poling and Langland Otherwise Satisfy the Requirements of Rule 23

Sections 27(a)(3)(B)(iii)(I)(cc) and 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provide that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead,

7

"[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Further, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Poling and Langland.

The typicality requirement of Rule 23(a)(3) is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to]those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v.Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Poling and Langland's claims are typical of those of the Class. Poling and Langland allege, like other Class members, that Defendants violated the Securities Act and Exchange Act by making false or misleading statements of material facts concerning Fermi, or by omitting to state material facts necessary to make the statements they did make not misleading. Poling and Langland, like

other Class members, purchased or otherwise acquired Fermi common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, as well as Fermi securities during the Class Period, at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Fermi's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. XunleiLtd.,* No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Poling and Langland are adequate representatives for the Class.  As set forth in greater detail below, in Pomerantz, Poling and Langland have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Poling is also represented by the Portnoy Law Firm in this litigation.  There is no evidence of antagonism or conflict between Poling and Langland's interests and those of the Class.  Moreover, Poling and Langland have submitted sworn Certifications declaring their respective commitment to protecting the interests of the Class (*see* Hood Decl., Ex. C), and their significant losses incurred as a result of the

9

Defendants' alleged wrongdoing demonstrates that they have a sufficient interest in the outcome of this Action to ensure vigorous advocacy on behalf of the Class.

Further, Poling and Langland constitute an appropriate movant duo of the type expressly permitted by the PSLRA and routinely appointed to serve as Co-Lead Plaintiffs in PSLRA actions, including in the Second Circuit, this District specifically, and around the country. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u–4(a)(3)(B)(iii)(I) (directing courts to appoint as lead plaintiff "the person *or group of persons* that" satisfies the PSLRA's criteria (emphasis added)); *Barnet v. Elan Corp.*, PLC, 236 F.R.D. 158, 162–63 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups, and appointing group consisting of six members with the largest financial interest as Lead Plaintiff); *Weltz v. Lee*, 199 F.R.D. 129, 133–34 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as Lead Plaintiff is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors as Lead Plaintiff pursuant to the PSLRA); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).   Indeed, in *China Agritech v. Resh*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]"  584 U.S. 732, 742 n.3 (2018).  More recently, in *In re Mersho*, the U.S. Court of Appeals for the Ninth Circuit likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment[.]"  6 F.4th 891, 899 (9th Cir. 2021).

Poling and Langland likewise have demonstrated their adequacy because they are a cohesive duo of likeminded investors who have submitted a Joint Declaration attesting to, *inter*

10

*alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as a Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. D. Courts routinely appoint more than one investor as Co-Lead Plaintiffs pursuant to the PSLRA under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 2:13-cv-6731-TON, 2014 WL 1395059, at *7–9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

### D.    Poling and Langland Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Poling and Langland's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

Poling and Langland's ability and desire to fairly and adequately represent the Class has been discussed above. Poling and Langland are not aware of any unique defenses Defendants

could raise that would render them inadequate to represent the Class. Accordingly, Poling and Langland should be appointed Co-Lead Plaintiffs for the Class.

## II.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval. *See id.* §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150–51 (D. Del. 2005).

Here, Poling and Langland have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Hood Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc.*

12

*Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Poling and Langland's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Poling and Langland's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Poling and Langland respectfully request that the Court issue an Order: (1) appointing Poling and Langland as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated: March 6, 2026

Respectfully submitted,

POMERANTZ LLP

/s/ J. Alexander Hood II
J. Alexander Hood II
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com

*Counsel for Stan Poling and Wesley Langland and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
28310 Roadside Drive, Suite 244

13

Agoura Hills, California 91301
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Stan Poling*

14

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Stan Poling and Wesley Langland, certifies that this brief contains 3,991 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on March 6, 2026.

*/s/ J. Alexander Hood II*
J. Alexander Hood II

15