## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, AND PANMURE LIBERUM LIMITED,<br><br>Defendants. | Civil Action No. 1:26-cv-00050-MKV<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY PUI SAN YVONNE CHONG FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

ARGUMENT ...........................................................................................................................4

    I.       CHONG IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF....................................................................4

           A.      Chong Filed a Timely Motion...................................................................5

           B.      Chong Has the Largest Financial Interest in the Relief Sought by the Class .............................................................................................5

           C.      Chong Satisfies Rule 23................................................................................6

    II.      CHONG's SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED ................................................................................................................7

CONCLUSION.........................................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................4

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................4, 5

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................6

*Mortimer v. Dipl. Pharm. Inc.*,
    2019 WL 3252221 (N.D. Ill. July 19, 2019)....................................................7

*Peters v. Jinkosolar Holding Co., Ltd.*,
    2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ....................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................1

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ......................................................................6

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)..................................................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..............................................................6

**Statutes**

15 U.S.C. §78u-4(a)(1) ........................................................................................4

15 U.S.C. §78u-4(a)(3) ................................................................................ *passim*

The Securities Exchange Act of 1934................................................................. *passim*

**Other Authorities**

17 C.F.R. §240.10b-5............................................................................................1

FED. R. CIV. P. 23 .........................................................................................2, 4, 5, 6

Plaintiff and Lead Plaintiff movant Pui San Yvonne Chong ("Chong" or "Movant"), on behalf of herself and all others similarly situated, respectfully submits this Memorandum of Law in support of her Motion to: (1) appoint Chong as Lead Plaintiff in the above-captioned securities class action; (2) approve Chong's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") and The Schall Law Firm ("SLF") as Co-Lead Counsel for the putative Class; and (3) grant such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of persons and entities that purchased or otherwise acquired Fermi Inc. ("Fermi" or the "Company") (i) common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") in connection with the Company's October 2025 initial public offering ("IPO"); and/or (ii) securities between October 1, 2025 and December 11, 2025, inclusive (the "Class Period") (the "Action").  The Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, as well as of §§11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k and 77o.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "'most adequate plaintiff.'"  15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004).  Chong is the most adequate Plaintiff because she has timely moved to be Lead Plaintiff, has the largest financial

---

[1]    Defined terms have the same definitions as in the complaint filed in the above-captioned action (the "Action") on January 5, 2026 (the "Complaint").  ECF No. 1.  Unless otherwise noted, all "¶" and "¶¶" citations refer to the Complaint.

interest in the litigation (nearly $158,230 in recoverable losses), and satisfies the representative requirements set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

For the reasons summarized herein and discussed more fully below, Chong's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

This is a federal securities class action on behalf of all persons and entities that purchased or otherwise acquired Fermi securities pursuant and/or traceable to the Registration Statement for the Fermi's IPO or during the Class Period against Fermi, certain of its officers and executives, and the underwriters of the IPO, seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, as well as of §§11 and 15 of the Securities Act. ¶1.

Fermi purports to be an energy and artificial intelligence ("AI") infrastructure company. The Company is structured as a real estate investment trust. ¶2. The Company allegedly aims to build multiple, large scale nuclear reactors and create its own network of large, grid-independent data centers, powered by a mix of nuclear, natural gas, solar, and battery energy, targeted at artificial intelligence. *Id.* The Company has no operating history or historical revenue. The Company's first project, Project Matador, purportedly aims to create the world's largest private energy campus, providing dedicated power for AI workloads. *Id.*

On October 1, 2025, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. ¶3. In the IPO, the Company sold 37,375,000 shares of common stock at a price of $21.00 per share. *Id.* The Company received net proceeds of approximately $745.7 million from the IPO. *Id.*

2

The Registration Statement described the Company's purported expected use of proceeds from the IPO, including that the Company expects "[u]pon entering into a lease agreement" that, "tenant prepayments" among other resources, to "satisfy 100% of the funding for [] long lead-time items." ¶41. The Registration Statement further described how the Company's "resources are sufficient to satisfy our financial obligations for at least twelve months following the issuance of these consolidated financial statements" due to "planned near term funding sources, including tenant prepayments." *Id.*

Specifically, the Registration statement stated as follows, in relevant part: Upon entering into a lease agreement with a tenant, we expect project financing, tenant prepayments and the other sources of liquidity discussed in Management's Discussion and Analysis of Financial Condition and Results of Operations— "Liquidity and Capital Resources" to satisfy 100% of the funding for our long lead-time items. *Id.*

The Registration Statement also touted the Company's high level of tenant demand, including that the Company had executed a letter of intent with the "First Tenant" and that the Company was "in advanced discussions with a select group of foundational anchor tenants." ¶44. The Registration Statement purported to warn of risks which "could" or "may" negatively impact the Company, including that the Company had "not yet constructed our facilities or entered into any binding contracts with any tenants" and only "entered into a single letter of intent." ¶45.

On December 12, 2025, before the market opened, Fermi revealed the first tenant for the Company's anticipated Project Matador AI campus had terminated its $150 million Advance in Aid of Construction Agreement, which would have supplied construction costs for the facility. ¶54. On this news, the Company's stock price fell $5.16 per share, or 33.8%, to close at $10.09 on December 12, 2025, on unusually heavy trading volume. ¶55. By the commencement of this

3

action, Fermi stock has traded as low as $8.59 per share, a 59% decline from the $21.00 per share IPO price.  ¶56.

**ARGUMENT**

**I.    CHONG IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *id.* at (a)(3)(B).  First, the plaintiff who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i).  Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i)(II)-(B)(iii)(I).

Finally, "the Court is required to appoint 'the most adequate plaintiff' as lead plaintiff."  *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007) (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)).  Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process."  *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009).  First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed [a] complaint or made a motion [for lead plaintiff] in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *see also Tronox*, 262 F.R.D. at 343-44.  The Rule 23 element of the presumption necessitates only a "preliminary showing that [the movant] satisfies the typicality and adequacy requirements of Rule 23."  *Tronox*, 262 F.R.D. at 344.  Second, so long as the presumption is not rebutted, the "most

4

adequate plaintiff" shall be appointed the lead plaintiff. *Id.* As demonstrated below, Chong meets these requirements and should be appointed to serve as Lead Plaintiff.

### A.    Chong Filed a Timely Motion

On January 5, 2026, the same day this Action was filed, a notice of pendency of the Action was published on *Business Wire*, a national newswire service. *See* Declaration of Thomas L. Laughlin, IV in Support of Motion by Pui San Yvonne Chong for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Laughlin Decl.") filed in support hereof, Ex. A. The requirements of 15 U.S.C. §78u-4(a)(3)(A)(i) have, therefore, been met. The Early Notice states that those wishing to serve as Lead Plaintiff "have 60 days from the date of this notice to move the Court to serve as lead plaintiff in this action." *See id.*

Chong's motion for appointment as Lead Plaintiff is therefore timely filed. Moreover, Chong has submitted a certification and declaration stating her willingness to serve as a representative party on behalf of the Class and provided her Class Period transactions. *See* Laughlin Decl., Ex. C.

### B.    Chong Has the Largest Financial Interest in the Relief Sought by the Class

To her knowledge, Chong is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class.

> Courts in this District generally look at the following factors to determine financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . . ; (3) the net funds expended during the class period . . . ; and (4) the approximate losses suffered.

*Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). "It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.'" *Id.* (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)) (alteration in original).

5

As evidenced by her PSLRA certification and the charts detailing the transactions and losses, Chong purchased Fermi securities during the Class Period and suffered losses as a result of Defendants' misconduct. *See* Laughlin Decl., Exs. B & C. Specifically, Chong suffered losses of approximately $158,230. Laughlin Decl., Ex. B.

Chong thus has a significant financial interest in this case. Moreover, Chong is unaware of any other movant that has sustained greater financial losses in connection with its Fermi transactions during the Class Period. Therefore, Chong has the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Chong Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(A)(3)-(4). "When identifying the presumptive lead plaintiff, courts usually examine only the 'adequacy' and 'typicality' factors under Rule 23." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623 n.3 (E.D. Wis. 2009) (citation omitted).

"A plaintiff's claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Mortimer v. Dipl. Pharm. Inc.*, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) (citation modified). Here, like all other class members, Chong: (1) purchased Fermi common stock during the Class Period; (2) was adversely affected by the alleged wrongdoing; and (3) suffered damages thereby. Thus, Chong's claims are typical of those of the Class.

6

A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously.

*Id.* Here, Chong has a substantial stake in the outcome of the case, indicating that she has the requisite incentive to vigorously represent the Class's claims. *See* Laughlin Decl., Ex. B. Also, as further detailed below, Chong has retained qualified and experienced counsel to vigorously prosecute the case on behalf of the Class. As such, the Court should find that the adequacy requirement has been met.

Because Chong filed a timely motion, has a large financial interest in the relief sought by the Class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that she is the "most adequate plaintiff."

## II.    CHONG'S SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id.* at (B)(iii)(II)(aa). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

Chong has selected the law firms of Scott+Scott and SLF to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Laughlin Decl., Ex. D. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions

7

and recovered hundreds of millions of dollars for victims of corporate fraud.[2] Also, Scott+Scott currently serves as lead or co-lead counsel in numerous securities class actions pending in several U.S. District Courts.[3] Similarly, SLF has served as co-lead or additional counsel in many successful securities class actions. *See also* Laughlin Decl., Ex E.

In light of the foregoing, the Court should approve Chong's selection of Scott+Scott as Lead Counsel. The Court can be assured that by approving Chong's choice of Lead Counsel, the putative Class will receive the highest caliber of representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) appoint Chong as Lead Plaintiff on behalf of the Class; (2) approve Chong's selection of counsel,

---

[2] Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys.*, *Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

[3] *See, e.g.*, Current Lead Counsel Appointments: *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *Giraudon v. Innovative Indus. Props., Inc.*, No. 1:25-cv-00182 (D. Md.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 5:24-cv-08869 (N.D. Cal.); *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.); *Jewik v. TransMedics Group, Inc.*, No. 1:25-cv-10385 (D. Mass.).

Scott+Scott and SLF, as Co-Lead Counsel; and (3) grant such other and further relief as the Court

may deem just and proper.

DATED: March 20, 2026

Respectfully Submitted,
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/*s*/ Thomas L. Laughlin, IV
Thomas L. Laughlin, IV
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Movant*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile:  (310) 388-0192
brian@schallfirm.com

*Counsel for Plaintiff and the Putative Class*

9

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Thomas L. Laughlin IV, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) that this Memorandum of Law was prepared using Microsoft Word, and the document contains 2,281 words as calculated by the application's word counting function, excluding the parts of the document exempted by Local Civil Rules 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on March 20, 2026, in New York, NY.

Thomas L. Laughlin, IV

1