**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED,<br><br>                    Defendants. | No. 1:26-cv-00050-MKV<br><br>Judge Mary Kay Vyskocil<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.     AS THE SOLE INSTITUTIONAL INVESTOR, NEW ENGLAND IRON
WORKERS IS PRECISELY WHAT CONGRESS INTENDED ...................................... 3

II.    NEW ENGLAND IRON WORKERS SHOULD BE APPOINTED BECAUSE IT
IS THE ONLY MOVANT THAT BOUGHT SHARES IN FERMI'S IPO ...................... 5

III.   AT MINIMUM, THE COURT SHOULD APPOINT NEW ENGLAND IRON
WORKERS AS CO-LEAD PLAINTIFF TO SAFEGUARD THE CLASS...................... 8

CONCLUSION............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ariad Pharms., Inc. Sec. Litig.*,
    842 F.3d 744 (1st Cir. 2016)..................................................................................................8

*Bowman v. Legato Sys., Inc.*,
    195 F.R.D. 655 (N.D. Cal. 2000)...........................................................................................5

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ...........................................................................................2, 6

*Christiansen v. Spectrum Pharms., Inc.*,
    2025 WL 2234041 (S.D.N.Y. Aug. 4, 2025)......................................................................4, 5

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
    2020 WL 2614703 (S.D.N.Y. May 22, 2020) ....................................................................1, 5

*Davoodi v. Zeta Glob. Holdings Corp.*,
    2025 WL 622686 (S.D.N.Y. Feb. 26, 2025)...........................................................................9

*Doherty v. Pivotal Software, Inc.*,
    2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ........................................................................8

*In re Dynagas LNG Partners LP Sec. Litig.*,
    504 F. Supp. 3d 289 (S.D.N.Y. 2020).....................................................................................6

*In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*,
    2025 WL 714171 (C.D. Cal. Mar. 3, 2025)...............................................................2, 6, 7, 9

*Gross v. AT&T Inc.*,
    2019 WL 7759222 (S.D.N.Y. June 24, 2019) ........................................................................9

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021).....................................................................................6

*Peters v. MoonLake Immunotherapeutics*,
    2026 WL 81717 (S.D.N.Y. Jan. 7, 2026) ............................................................................3, 9

*Rodriguez v. DraftKings Inc.*,
    2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021).........................................................................5

*Shapiro v. TG Therapeutics, Inc.*,
    2022 WL 16555585 (S.D.N.Y. Oct. 31, 2022)........................................................................5

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)...................................................................................................2, 6

*Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Sleep No. Corp.*,
    2022 WL 1607306 (D. Minn. May 20, 2022)................................................................9

*Sundaram v. Freshworks Inc.*,
    2023 WL 1819158 (N.D. Cal. Feb. 8, 2023) ................................................................8

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) .................................................................5

*Wang v. Athira Pharma, Inc.*,
    2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) ...........................................................9

**Statutes**

15 U.S.C. § 78u-4 *et seq*. ...................................................................................*passim*

15 U.S.C. §§77z-1, *et seq*. ................................................................................. *passim*

**Other Authorities**

Eric Tam & Laarni T. Bulan, Securities Class Action Settlements: 2024 Review
    and Analysis, Cornerstone Research (2025), ..............................................................3

Michael A. Perino, *Markets and Monitors: The Impact of Competition and
    Experience on Attorneys' Fees in Securities Class Actions*...................................3, 4

*There Are Plaintiffs: An Empirical Analysis of Securities Class Action
    Settlements*, 61 VAND. L. REV. 355, 378 (2008).......................................................4

Proposed Lead Plaintiff New England Iron Workers[1] respectfully submits this Memorandum of Law in further support of its Motion for appointment as Lead Plaintiff and approval of selection of Labaton as Lead Counsel; and in opposition to all competing movants.[2]

## PRELIMINARY STATEMENT

New England Iron Workers should be appointed Lead Plaintiff because it is the sole institutional movant and the only movant with indisputable standing on each of the Class' claims.[3] That combination is not merely favorable, it makes New England Iron Workers precisely the type of lead plaintiff Congress intended: a well-resourced and experienced institution which does not subject the Class to any potential unique defenses.

Congress designed the PSLRA to place sophisticated institutional investors at the helm of securities class actions because institutions bring the resources, expertise, and fiduciary discipline needed to oversee counsel effectively and maximize recovery for the Class. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.,* 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (finding that an institutional movant is "the kind of sophisticated institutional investor favored by

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from those in New England Iron Workers' opening motion and supporting papers.  *See* ECF Nos. 17-19.  All citations and internal quotations are omitted, and all emphasis is added, unless noted.

[2] In addition to New England Iron Workers, eight other motions for Lead Plaintiff appointment were filed: Daniel Enrique-Sarano (ECF Nos. 11-13); Joseph Stella (ECF Nos. 22-23, 26); Robert Kelley (ECF Nos. 24-25, 27); David R. Minton (ECF Nos. 29-31); Scott West (ECF Nos. 32-33, 37); Pui San Yvonne Chong (ECF Nos. 34-36); Stan Poling and Wesley Langland ("Poling and Langland") (ECF Nos. 38, 40-41); and Ever Capital Investments S.V., S.A. ("Ever Capital") and Maria Patricia Román Declara (collectively the "Ever Capital Group") (ECF Nos. 42-44).  Certain of those movants have withdrawn their motions or filed notices indicating they do not oppose the competing movants, including: Robert Kelley (ECF No. 46); Daniel Enrique-Sarano (ECF No. 48); Poling and Langland (ECF No. 56); David R. Minton (ECF No. 57); and Pui San Yvonne Chong (ECF No. 58).

[3] As an initial matter, New England Iron Workers' loss of $120,216 clearly gives it a larger financial interest than several of the competing movants, including: Daniel Enrique-Sarano ($31,935 loss (ECF No. 13-3)); Robert Kelley ($112,717 loss (ECF No. 27-2)); David R. Minton ($61,880 loss (ECF No. 31-3)); and Poling and Langland ($68,269 loss (ECF No. 41-2))

the PSLRA"). Empirical research confirms these benefits and shows that securities class actions led by institutional investors produce larger settlements and better outcomes for harmed investors. New England Iron Workers is a pension fund with substantial experience overseeing counsel, managing funds, and fulfilling fiduciary obligations to its members, precisely the institutional lead plaintiff Congress envisioned. Appointing New England Iron Workers honors Congress' design and gives the Class the best chance at a favorable recovery.

Beyond its institutional status, New England Iron Workers is also the ***only*** movant with incontestable standing on each of the Action's claims. The Action's Securities Act claims require "a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023). Fermi has registered shares both pursuant to its IPO and in a subsequent registration statement. None of the competing movants purchased shares directly in Fermi's IPO, so Defendants will have a powerful argument that the competing movants do not have standing in the Action's Securities Act claims at all. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013) ("[W]hen a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering.") (emphasis in original). Whether that attack would ultimately succeed is beside the point—it would, at a minimum, expose the Class to unnecessary risk and expense throughout the litigation. New England Iron Workers is immune to any such challenge because it purchased shares directly in the IPO. *In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*, 2025 WL 714171, at *7 (C.D. Cal. Mar. 3, 2025) (holding that plaintiffs can establish standing by alleging that they "purchased their shares directly in the relevant offering"). Appointing any other movant as Lead Plaintiff would thus

2

needlessly invite a threshold standing dispute that could delay or even derail the Class'

recovery. This risk is eliminated entirely by appointing New England Iron Workers.

No other movant offers what New England Iron Workers brings to this Action: the

institutional sophistication Congress demanded and ironclad standing on each of the Class' claims.

The Court should appoint New England Iron Workers as Lead Plaintiff.

## ARGUMENT

### I.    AS THE SOLE INSTITUTIONAL INVESTOR, NEW ENGLAND IRON WORKERS IS PRECISELY WHAT CONGRESS INTENDED

New England Iron Workers' status as the sole institutional investor seeking appointment

is dispositive. Courts in this District consistently recognize the PSLRA's clear preference for

institutional investors to serve as lead plaintiff in securities class actions. *See, e.g., Peters v.*

*MoonLake Immunotherapeutics,* 2026 WL 81717, at *1 (S.D.N.Y. Jan. 7, 2026) (appointing an

institutional Lead Plaintiff over an individual with a larger loss because of its resources and

experience). The reason is simple: institutional investors have the resources, sophistication, and

incentives to serve as effective monitors of class counsel—the precise reform Congress sought to

achieve.

Capital markets experts agree that class members benefit when institutional investors such

as New England Iron Workers serve as lead plaintiff, resulting in substantially larger settlements,

and lower agency costs. *See* Eric Tam & Laarni T. Bulan, Securities Class Action Settlements:

2024 Review and Analysis, Cornerstone Research (2025), at 12 (finding that the median settlement

amount for institutional investor-led cases (approximately $37 million) was over five times larger

than the median settlement amount in cases without an institutional lead plaintiff (approximately

$7 million); Michael A. Perino, *Markets and Monitors: The Impact of Competition and Experience*

*on Attorneys' Fees in Securities Class Actions*, 15 ST. JOHN'S UNIV. SCH. OF LAW L. STUD.

RES., Working Paper No. 06-0034, 2006 ("Because public pension funds appear *ex ante* to be the most capable and best positioned institutional lead plaintiffs on average all other things being equal, the participation of a public pension fund as lead plaintiff should be correlated with lower fee requests by class counsel and lower fee awards."); James D. Cox, Randall S. Thomas & Lynn Bai, *There Are Plaintiffs and ... There Are Plaintiffs: An Empirical Analysis of Securities Class Action Settlements*, 61 VAND. L. REV. 355, 378 (2008) ("We find that the presence of an institutional lead plaintiff increases settlement size overall.").

In contrast, appointing an individual as Lead Plaintiff would expose the Class to unnecessary risks.  Little is known about any of the competing movants.  The Court therefore cannot assess whether they have the capacity to adequately lead this Action. If one of these individuals proves inadequate after appointment, it will be too late.  The Class will already have suffered waste and delay. *See, e.g., Christiansen v. Spectrum Pharms., Inc.*, 2025 WL 2234041, at *3 (S.D.N.Y. Aug. 4, 2025) (reopening lead plaintiff appointment when evidence emerged that the court-appointed lead plaintiff had "violated class members' trust by divulging confidential settlement information to . . . a non-party," and that he was "fixated on matters that are irrelevant to this case," including a conspiracy theory).

Competing movant Joseph Stella has already demonstrated the fundamental errors an inexperienced individual can make.  On March 19, 2026, one day before lead plaintiff opposition briefs were due, Stella submitted an amended certification and loss chart disclosing previously undisclosed derivative option contract trades (ECF No. 49).  These newly-disclosed trades substantially reduced Stella's financial interest in the Action. *Compare* ECF No. 49-2 *with* ECF No. 26-2.  Stella claims he "did not previously understand that the PSLRA's disclosure requirements for 'securities' included these specific option contracts." ECF No. 50.  Whatever the

4

reason for this oversight, it exemplifies the mistakes an inexperienced individual without institutional resources makes. In a complex case like this, such errors can cause unnecessary delays and expenses, such as in the *Spectrum Pharmaceuticals* case. That is why Courts regularly reject movants who make these sorts of errors. *See, e.g., Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5-6, *9 (S.D.N.Y. Nov. 12, 2021) (finding lead plaintiff movant inadequate due in part to inconsistencies in the movant's loss chart and certification).

On the other hand, New England Iron Workers' motion is the paradigm envisioned by the PSLRA: one "strong lead plaintiff" with one counsel to "actively manage the litigation on behalf of the class." *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000); *see also Shapiro v. TG Therapeutics, Inc.*, 2022 WL 16555585, at *6 (S.D.N.Y. Oct. 31, 2022) (finding that a lead plaintiff movant which was "an institutional investor with significant resources, expertise, and experience . . . is precisely the sort of plaintiff that Congress intended to empower when it enacted the PSLRA"); *World Wrestling Ent. Inc.*, 2020 WL 2614703, at *3 (finding that an institutional movant is "the kind of sophisticated institutional investor favored by the PSLRA"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *6 (S.D.N.Y. Jan. 15, 2021) (noting that the "presumption in favor of large institutional investors [is] a result that Congress both considered and intended"). Appointing any other movant would frustrate this Congressional design.

## II.     NEW ENGLAND IRON WORKERS SHOULD BE APPOINTED BECAUSE IT IS THE ONLY MOVANT THAT BOUGHT SHARES IN FERMI'S IPO

New England Iron Workers should be appointed Lead Plaintiff because it is the only movant that purchased shares in Fermi's IPO, meaning it is the only movant which indisputably has standing on the Securities Act claims in the Action. One of the Action's primary claims arises

under Section 11 of the Securities Act.  Complaint[4] ¶ 1.[5]  In a case brought pursuant to Section 11 of the Securities Act, plaintiff must "plead and prove that [they] purchased shares traceable to the allegedly defective registration statement."  *Slack Techs.*, 598 U.S. at 770.  Proving Securities Act standing is simple when all of a company's common stock shares were issued pursuant to the allegedly misleading registration statement.  *Golden Heaven Grp.*, 2025 WL 714171, at *7 ("When all of a company's shares have been issued in a single offering under the same registration statement, this tracing requirement will typically pose no obstacle.").  However, a lead plaintiff movant cannot prove they have standing if they acquired shares after a company had registered shares in multiple registration statements.  *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 561 (S.D.N.Y. 2021) (finding that a plaintiff had failed to demonstrate standing on a motion to dismiss where the defendant company had issued shares in multiple offerings by the time the plaintiff had bought shares); *Century Aluminum Co.*, 729 F.3d at 1107-08 ("[W]hen a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering.") (emphasis in original).

Fermi registered shares in the Registration Statement for its October 1, 2025 IPO and again on October 17, 2025 in an S-8 filing.  The Action only concerns the IPO Registration Statement because the Class for the Securities Act claims is defined as "all persons and entities that purchased or otherwise acquired Fermi . . . common stock pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's

---

[4] All references to the "Complaint" are to the complaint filed in this Action at ECF No. 1.
[5] The Action also brings claims under Section 15 of the Securities Act.  Complaint ¶ 84-88.  Section 15 claims are "control" claims, *id.*, which require proving an underlying claim, such as a Section 11 claim.  *See In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 326 (S.D.N.Y. 2020).  Therefore, if the competing movants fail to demonstrate a Section 11 claim, they also fail to demonstrate they have Section 15 claims and will be completely excluded from the Class as to the Securities Act claims.

IPO." Complaint ¶ 57. Therefore, all movants must prove they purchased Fermi stock traceable to the IPO. Fermi's IPO prospectus (filed October 1, 2025) disclosed that it would file a Form S-8 registration statement for stock issuable under its equity incentive plan, and that shares under that registration would be available for sale in the open market following effectiveness. McConville Decl. Exhibit A (excerpt from Fermi's prospectus). Fermi then filed the S-8 registration statement on October 17, 2025. McConville Decl. Exhibit B (S-8 filed by Fermi). Because Fermi filed two registration statements, and this Action *only* concerns shares issued in its original IPO Registration Statement, each Lead Plaintiff movant must prove they purchased shares *directly traceable* to the IPO registration statement *and not* the additional shares issued in connection with the Form S-8. The gold standard for proving standing in such cases is to purchase stock directly in the IPO, exactly as New England Iron Workers did. *Golden Heaven*, 2025 WL 714171, at *7 (holding that plaintiffs can establish statutory standing by alleging that they "purchased their shares directly in the relevant offering"). In order to ensure the Class' Securities Act claims are represented, New England Iron Workers should be appointed.

Moreover, none of the movants who claim nominal losses larger than new England Iron Workers can prove they have standing on the Securities Act claims at all because none of them suffered losses on Fermi shares purchased prior to Fermi's S-8. Joseph Stella did not buy any Fermi shares until November 21, 2025-more than a month after the S-8 filing. ECF No. 26-1. Scott West bought Fermi shares on October 2, 2025, but sold all those shares for a gain by October 8, 2025, before the S-8 filing. ECF No. 37-2. The Ever Capital Group members bought shares on October 3, 2025, but sold all those shares for a gain on October 13, 2025-also before the S-8. ECF No. 44-3. The conclusion is inescapable: every dollar of loss claimed by these movants under the Securities Act claims was incurred in a "mixed market" where shares were untraceable to the IPO.

7

Courts reject plaintiffs in such circumstances. *See Doherty v. Pivotal Software, Inc.,* 2019 WL 5864581, at *11 (N.D. Cal. Nov. 8, 2019) (rejecting a movant group which could not adequately allege its shares were traceable to the relevant offering); *Sundaram v. Freshworks Inc.*, 2023 WL 1819158, at *5 (N.D. Cal. Feb. 8, 2023) (rejecting a lead plaintiff movant which clearly purchased shares "in a mixed market" and therefore had "not plausibly alleged that his shares are traceable to the IPO"); *see also In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (finding, on a motion to dismiss, that a plaintiff had not proven standing on Securities Act claims when they bought shares in a market that included shares not traceable to the relevant offering). Even movant Pui San Yvonne Chong, who claims to have suffered a loss on shares purchased prior to the S-8, did not directly purchase shares in the IPO. Therefore, her standing is also vulnerable to attack.

Because New England Iron Workers is the only movant that purchased shares directly in Fermi's IPO, it is the only movant that can establish unquestionable standing on the Securities Act claims, and it should therefore be appointed Lead Plaintiff to ensure those claims are adequately represented on behalf of the Class.

## III.    AT MINIMUM, THE COURT SHOULD APPOINT NEW ENGLAND IRON WORKERS AS CO-LEAD PLAINTIFF TO SAFEGUARD THE CLASS

Alternatively, the Court should appoint New England Iron Workers as co-Lead Plaintiff to ensure that the Class will benefit from a representative with indisputable Securities Act standing and U.S.-based institutional oversight.

Appointing New England Iron Workers co-Lead Plaintiff would protect the Class by ensuring it has a representative with standing on the Securities Act claims. As discussed above, New England Iron Workers is the ***only*** movant that purchased Fermi IPO shares at the IPO price (ECF No. 19-1), meaning New England Iron Workers is the only movant with unquestionable

standing on the Action's Securities Act claims. *Golden Heaven*, 2025 WL 714171, at *7 (holding that plaintiffs can establish statutory standing by alleging that they "purchased their shares directly in the relevant offering"). Therefore, the Class would be best protected by appointing New England Iron Workers as co-Lead Plaintiff to ensure the Class will have at least one representative with irrefutable standing on the Securities Act claims. *See Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (appointing an institution with Securities Act claims as co-Lead Plaintiff because doing so would "better serve[] the overall interests of the purported class"); *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at *3 (W.D. Wash. Oct. 5, 2021) (appointing a co-Lead Plaintiff to oversee Securities Act claims).

Moreover, appointing New England Iron Workers co-Lead Plaintiff would protect the Class by ensuring it is represented by a well-resourced domestic institution actively overseeing its counsel. Lead plaintiff movants living overseas, such as Joseph Stella, the Ever Capital Group, and Pui San Yvonne Chong "may present challenges to the expeditious litigation of [the] case." *Davoodi v. Zeta Glob. Holdings Corp.*, 2025 WL 622686, at *3 (S.D.N.Y. Feb. 26, 2025). In contrast, New England Iron Workers is based in Massachusetts and regularly communicates with and instructs its counsel, Labaton, regarding this matter. To best protect the Class, New England Iron Workers respectfully requests that the Court "appoint an institutional investor based in the United States to serve as co-lead plaintiff." *Id.*; *see also Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Sleep No. Corp.*, 2022 WL 1607306, at *6 (D. Minn. May 20, 2022) (appointing a domestic institution as co-lead plaintiff alongside a foreign individual and finding that "the appointment of an individual investor and institutional investor as co-plaintiffs will ensure adequate representation of the class"); *MoonLake Immunotherapeutics,* 2026 WL 81717, at *1

9

(rejecting an individual movant in part because the movant "resides in France" and had no experience "supervising [] American counsel in American litigation").

## **CONCLUSION**

For the reasons set forth above and in its opening brief, New England Iron Workers respectfully requests that the Court appoint New England Iron Workers as Lead Plaintiff, approve its selection of Labaton as Lead Counsel for the Class, and deny the competing motions.

DATED: March 20, 2026

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

10

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Movant New England Iron Workers certifies that this Memorandum of Law in support of the New England Iron Workers contains 3,077 words and is in compliance with the word-count limitation of Local Civil Rule 7.1(c).

Dated: March 20, 2026

*s/ Francis P. McConville*
Francis P. McConville
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com

11