# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C, CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED,<br><br>Defendants. | Case No. 1:26-cv-00050-MKV<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF EVER CAPITAL INVESTMENTS S.V., S.A. AND MARIA PATRICIA ROMÁN DECLARA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO <u>THE COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ........................................................................................................................... 4

    A.    Mr. Stella Fails to Satisfy The Requirements Of Rule 23 ............................................. 4

    B.    Mr. Stella's Loss is Entirely Derived from Transactions in Third-Party Stock Options . 4

    C.    Mr. Stella's PSLRA Certification Contained Errors.......................................................... 9

    D.    Ever Capital and Ms. Román Declara Are the Most Adequate Plaintiff ........................ 11

CONCLUSION........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) .............................................................. 6

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019).............................................................. 10

*City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*,
2025 WL 743986 (S.D.N.Y. Mar. 6, 2025) ................................................................ 7

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ................................................... 2, 6, 7

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ................................................... passim

*In re Elan Corp. Sec. Litig.*,
2009 WL 1321167 (S.D.N.Y. May 11, 2009) ............................................................ 6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................. 4

*In re Vonage IPO Sec. Litig.*,
2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................................... 10

*Jaramillo v. Dish Network Corp.*,
2023 WL 5312062 (D. Colo. Aug. 16, 2023) ......................................................... 5, 8

*Jurkowski v. Molycorp, Inc.*,
2014 WL 12792750 (S.D.N.Y. Apr. 2, 2014) ........................................................... 6

*Micholle v. Ophthotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)................................................. 5, 10, 11

*Patel v. Reata Pharms., Inc.*,
549 F. Supp. 3d 559 (E.D. Tex. 2021)....................................................................... 5

*Plaut v. Goldman Sachs Group, Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)....................................................... 3, 10

*Rodriguez v. DraftKings Inc.*,
2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)....................................................... 3, 10

*Saye v. NIO Inc.*,
   2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022) ......................................................................... 5

*Schaffer v. Horizon Pharma Plc*,
   2016 WL 3566238 (S.D.N.Y. June 27, 2016) ...................................................................... 4, 10

**Statutes**

15 U.S.C § 77b............................................................................................................................... 9

15 U.S.C. § 78u-4 ................................................................................................... 1, 4, 9, 11

**Other Authorities**

H.R. Rep. No. 104-369 (1995)........................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 11

Ever Capital and Ms. Román Declara respectfully submit this memorandum of law in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Lead Counsel, and in opposition to the competing motions.[1]

## PRELIMINARY STATEMENT

Under the PSLRA, the Court is to appoint the movant that has the largest financial interest in the litigation "**and** otherwise satisfies the [typicality and adequacy] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc).  Here, Ever Capital and Ms. Román Declara—highly experienced investors with losses approaching $385,000—is the **only** movant that satisfies the necessary elements for appointment.  *See* ECF No. 44-4.  Ever Capital and Ms. Román Declara have a significant financial interest in this case, have been fully engaged in the Lead Plaintiff process, and attested to their ability to closely oversee counsel and the zealous prosecution of this action to help ensure that the Class receives the best possible result in this important case.  *See* ECF No. 44-1.  What's more, as an institution, Ever Capital is precisely the type of investor that Congress intended to lead securities class actions.  *See* H.R. Rep. No. 104-369, at \*34 (1995) (Conf. Rep.); S. Rep. No. 104-98, at \*6 (1995).  There is no doubt that Ever Capital and Ms. Román Declara appreciate and accept the responsibilities that they are seeking to undertake on behalf of absent putative Class members and will be exemplary stewards for the Class.

While one movant, Joseph Stella, asserts losses larger than Ever Capital and Ms. Román Declara, Mr. Stella's motion suffers from disqualifying defects that render him inadequate to represent the Class, and require that his motion be denied.  Significantly, Mr. Stella only disclosed these defects in an amended PSLRA certification filed on March 19, 2026, the day prior to

---

[1] Capitalized terms are defined in Ever Capital and Ms. Román Declara's initial brief (ECF No. 43) and emphasis is added.

opposition briefs being due. *See* ECF No. 49-1. Ever Capital and Ms. Román Declara reserve all rights to supplement their arguments on reply, if necessary, given the limited time to respond.[2]

***First, all of Mr. Stella's losses are derived from sales of derivative put option contracts.*** *See* ECF No. 49-1 at 4, 49-2 at 4. These put option contracts required Mr. Stella to acquire Fermi stock at pre-determined, non-market prices. Indeed, unlike all other movants, Mr. Stella did not purchase ***any*** Fermi stock on the open market. Mr. Stella's significant transactions in options generate unique questions that will provide fodder for defendants during discovery, threaten to become a focus of the litigation, and pose further unnecessary risks to the proposed class. Courts routinely hold that a movant that derived virtually all its loss from transactions in options is an atypical and inadequate class representative. *See Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (refusing to appoint movant when "60% of his claimed losses came as a result of options trading" because "[h]e is not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder"); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (internal quotations omitted) (rejecting lead applicant that derived "82%" of losses "from options-related transactions" as it would introduce "factual issues unique to [movant and] would likely threaten to become the focus of the litigation").

---

[2] On March 6, 2026, nine movants filed motions to be appointed Lead Plaintiff: (1) Ever Capital and Ms. Román Declara (ECF No. 42); (2) Mr. Stella (ECF No. 22); (3) Daniel Enrique-Sarano ("Sarano") (ECF No. 11); (4) Iron Workers District Council of New England Pension Fund ("Iron Workers") (ECF No. 17); (5) Robert Kelley ("Kelley") (ECF No. 24); (6) David R. Minton ("Minton") (ECF No. 29); (7) Scott West ("West") (ECF No. 32); (8) Pui San Yvonne Chong ("Chong") (ECF No. 34); and (9) Stan Poling and Wesley Langland ("Poling and Langland") (ECF No. 38). Sarano, Kelley, Minton, Poling and Langland, and Chong filed notices of non-opposition or withdrew their motions, recognizing that they do not assert the largest financial interest in the relief sought by the class. *See* ECF Nos. 46, 48, 56-58. Defendants do not oppose the competing Lead Plaintiff motions. *See* ECF No. 55.

***Second, Mr. Stella's initial PSLRA certification is rife with errors, having excluded all options transactions—amounting to over 150 trades—that were required to be disclosed.*** Compare ECF Nos. 26-1, 26-2 with 49-1, 49-2.  While Mr. Stella claims the omission was "unintentional," ECF No. 49-1 at 2, that he could misunderstand such fundamental and critical information demonstrates that Mr. Stella is not adequate.  *See Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (errors in transaction data "speaks to a level of carelessness, and causes me to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff") (internal quotations omitted); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (refusing to appointment movant who omitted trades from certification due to claimed "clerical error").

Accordingly, Ever Capital and Ms. Román Declara have the largest financial interest of any qualified movant and should be appointed Lead Plaintiff as set forth in the chart below.

| Movant | Reported Loss Exchange Act | Reported Loss Securities Act |
|---|---|---|
| ~~Stella~~ | ~~$494,982~~ | ~~$532,776~~ |
| **Ever Capital and Ms. Román Declara** | $384,777 | $132,356 |
| **West** | $237,943 | Unreported |
| **Chong** | $158,230 | Unreported |
| **Iron Workers** | $120,216 | Unreported |
| **Kelley** | $112,717 | $36,091 |
| **Minton** | $78,273 | $61,880 |
| **Poling and Langland** | $68,269 | $49,827 |
| **Sarano** | $31,935 | $30,910 |

No other movant asserts a loss larger than Ever Capital and Ms. Román Declara, and there is no "proof" that they are somehow unfit to represent the Class.   15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).  To the contrary, the **only** proof in the record firmly establishes that Ever Capital and Ms. Román Declara will serve as an excellent Lead Plaintiff.  *See* ECF Nos. 44-1, 44-3.  As such, Ever Capital and Ms. Román Declara respectfully submit that they should be appointed Lead Plaintiff, and their motion should otherwise be granted.

## ARGUMENT

### A.    Mr. Stella Fails to Satisfy The Requirements Of Rule 23

While Mr. Stella purports to have incurred greater losses than Ever Capital and Ms. Román Declara, Mr. Stella's losses only raise a **rebuttable** presumption that he should be appointed Lead Plaintiff.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation.").  That presumption may be rebutted upon "'proof' of a non-speculative risk that the movant will not be adequate." *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016).  Even at this early stage of the litigation, there is substantial proof that Mr. Stella is inadequate to serve as Lead Plaintiff.

### B.    Mr. Stella's Loss is Entirely Derived from Transactions in Third-Party Stock Options

Regardless of his financial interest, Mr. Stella cannot be appointed Lead Plaintiff to represent a Class comprised primarily of investors who purchased Fermi stock on the open market because he purchased no Fermi stock on the open market during the Class Period.  Instead, he only acquired shares through assignments pursuant to the sale of derivative put option contracts.  *See* ECF No. 49-2 at 4.[3]  Mr. Stella's options transactions render him atypical of the Class of stock

---

[3] When one sells a put option, they are "obligate[d] . . . to take delivery, or purchase shares, of the underlying stock at the strike price specified in the option contract," regardless of the market price at the time.  Each contract entitles the put buyer to "put" (or assign) shares of stock to the put seller at the predetermined strike price. *See Investopedia, Put Option: What It Is, How It Works, and How to Trade*

4

purchasers he seeks to represent and subject him to unique defenses, thereby disqualifying them from serving as Lead Plaintiff. *See ProShares*, 2020 WL 7698321, at *4 (rejecting movant "whose losses overwhelmingly reflect his sale of put options" because that trading pattern "raises issues of his typicality and adequacy" and "would likely threaten to become the focus of the litigation"); *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023) ("Parties who exclusively sell put options, or who only acquire common stock involuntarily when put options they have written are exercised—are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions.").

To be clear, the question is not whether sellers of put options like Mr. Stella are members of the putative Class.  Instead, the critical question is whether movants whose losses are ***entirely attributable*** to their options transactions are typical and adequate Class representatives.  *See Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 568 (E.D. Tex. 2021) ("Just because [the movant], as an options investor, is disqualified from being the 'most adequate' lead plaintiff does not mean that any [ ] investors holding options are excluded from the class.").

Courts in this District routinely hold that where a movant's losses derive ***solely*** from trading in options, like Mr. Stella's here, that movant is atypical.  *See, e.g.*, *Saye v. NIO Inc.*, 2022 WL 17666398, at *8 (S.D.N.Y. Dec. 14, 2022) (declining to appoint movant with largest financial interest because he "traded exclusively in [ ] call options" and thus "fail[ed] to satisfy Rule 23's typicality requirement"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (finding married couple that traded "almost exclusively in put and call options" to be "atypical plaintiffs"); *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11,

---

*Them*, James Chen (Updated Dec. 26, 2025) *available at* https://www.investopedia.com/terms/p/putoption.asp (last visited Mar. 20, 2026).

2009) (finding investor that traded exclusively in options "atypical and inadequate"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (finding investor that traded only options atypical because, if appointed lead plaintiff, complex valuation questions specific to the movant's options "would likely threaten to become the focus of the litigation"); *see also Jurkowski v. Molycorp, Inc.*, 2014 WL 12792750, at *2-3 (S.D.N.Y. Apr. 2, 2014) (refusing to appoint movant who "purchased his [] stock in connection with put contracts he sold").

Moreover, even in situations where movants both traded in options and purchased common stock on the open market but incurred most of their losses from options-related transactions, courts have found those movants to be atypical and declined to appoint them as lead plaintiff. *See, e.g., ProShares*, 2020 WL 7698321, at *4 (rejecting movant that claimed largest loss where 82% of movant's loss arose from options-related transactions); *Allergan*, 2019 WL 1510894, at *2 (rejecting movant that claimed largest loss where 60% of movant's losses arose from options-related transactions). Here, Mr. Stella incurred **100%** of his loss in connection with options transactions, rendering him atypical.

Judge Buchwald's decision in *ProShares* is instructive. There, a movant with the largest financial interest sold put options (like Mr. Stella here) that ultimately required it to acquire shares at non-market prices. These options-related transactions accounted for 82% of its total loss of $18.2 million. Despite a nearly $16 million difference between this movant and the movant that claimed the next-largest loss, who did not trade options, Judge Buchwald found the options-trading movant atypical and declined to appoint it as lead plaintiff. 2020 WL 7698321, at *3-4. In so holding, Judge Buchwald reasoned that the options-trading movant may not have been "motivated by the same market incentives as class members who traded shares on the open market" and "factual issues unique to [the options-trading movant] would likely threaten to become the focus

6

of the litigation" if it were to be appointed. *Id*. at 4. Judge Buchwald issued a similar ruling in a different case just last year. *See City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, 2025 WL 743986, at *3 (S.D.N.Y. Mar. 6, 2025) (movant "atypical because their losses arose primarily from options-related transactions and short sales. . . If the Court were to appoint the [movant] as lead plaintiff, it is likely that their options trading and short selling would become a focal point at class certification, with unique questions raised about their resulting losses").

Similarly, in *Allergan*, the movant claiming the largest financial interest engaged in options-related trading that accounted for 60% of its loss. Despite its purportedly superior financial interest, Judge McMahon declined to appoint the options-trading movant, and instead appointed the movant that claimed the next-largest loss. 2019 WL 1510894, at *2. Judge McMahon reasoned that the options-trading movant was "not . . . an investor whose claims will turn out to be typical of the average common stockholder within the meaning of [Rule 23](a)(3)." *Id*.

As both *ProShares* and *Allergan* recognized, the appointment of an options-trading movant "very likely would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *ProShares*, 2020 WL 7698321, at *4 (quoting *Allergan*, 2019 WL 1510894, at *2)). These concerns about the complexity and uniqueness of facts surrounding options-trading movants have compelled other courts to disqualify investors who predominantly suffered losses from options-related transactions.

In *Dish Network*, the court, relying on *ProShares* and *Allergan*, found that movants that sold put options were precluded from being appointed as lead plaintiff because there are "significant differences that draw into question the adequacy of put sellers as class

7

representatives," including the fact that options investors and common stock purchasers "operate on different time horizons. . . Puts are time-limited; a put seller bets that a company's stock value will not decline to a specified strike price within the life of an option.  Common stock purchasers do not operate under the same limitations."  2023 WL 5312062, at *5.  As such, the *Dish* court agreed "with the [*ProShares* and *Allergan*] courts that appointing movants whose losses overwhelmingly relate to options trades (and whose option-trading strategies may have been motivated by different market incentives than common stock traders) would introduce factual issues irrelevant to the class as a whole."  *Id.*  Indeed, "[p]arties who exclusively sell put options, or who only acquire common stock involuntarily when put options they have written are exercised—are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions."  *Id.*

The issues concerning the options-trading movants' typicality that caused these courts to disqualify those movants are also present here.  If anything, these disqualifying issues are amplified here because, unlike the movants in *ProShares* and *Allergan*, who at least incurred some losses from a subset of shares purchased on the open market, Mr. Stella's financial interest is derived ***entirely*** from options-related transactions as he purchased ***zero*** shares of Fermi stock on the open market.

If the Court appoints Mr. Stella as Lead Plaintiff, these and other questions regarding his options trading is certainly expected to be an issue throughout discovery and "become focal points at [the] class certification [stage]," distracting from the prosecution of the Class' claims and exposing the Class to unnecessary risk.  *ProShares*, 2020 WL 7698321, at *4.  Accordingly, Mr. Stella is subject to unique defenses that preclude his appointment as Lead Plaintiff.

**C.      Mr. Stella's PSLRA Certification Contained Errors**

The seminal statue governing federal securities class action litigation is the PSLRA.  *See* 15 U.S.C. § 78u-4.  One of the most important responsibilities the PSLRA imposes on Lead Plaintiff candidates is to "provide a sworn certification" that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint."  15 U.S.C. § 78u-4(a)(2)(A)(iv).  Without accurate transaction information in the certification, it is not possible to determine which movant "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23," as required by the PSLRA at the Lead Plaintiff stage of the litigation.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

The transaction information Mr. Stella provided in his initial certification is erroneous, excluding approximately 99% of the transactions that the PSLRA required Mr. Stella to disclose.  This is a separate and independent reason to deny Mr. Stella's motion.

Specifically, the plaintiff filed the complaint in this case on January 5, 2026—over two months ago.  ECF No. 1.  The complaint includes Fermi "securities," which, by definition, includes "option[s]."  *Id.* ¶1; 15 U.S.C § 77b(a)(1).  In his PSLRA certification filed on March 6, 2026, Mr. Stella listed a single transaction: a purchase of 84,300 shares at $15.00 per share on November 21, 2025, *see* ECF No. 26-1, but not that Mr. Stella's single purchase was the result of a put assignment.

Then, two weeks later and on the eve of the deadline for opposition briefs, Mr. Stella filed an amended certification that lists over 150 additional trades in derivative stock options.  *See* ECF No. 49-1 at 4-6.  The amended certification also acknowledges that Mr. Stella's only purchase of Fermi stock resulted from shares that were assigned to him at predetermined, non-market prices, as the result of his sale of put options, as discussed above.  *Id.* at 4.

9

Courts routinely deny Lead Plaintiff applications based on erroneous certifications, such as here, because the errors undermine the applicant's adequacy.  This is the case even when the errors are "unintentional," as Mr. Stella claims.  *Id.* at 2; *DraftKings,* 2021 WL 5282006, at *9 (refusing to appointment movant who omitted trades from certification due to claimed "clerical error" because "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place. Minor or not—and the Court by no means finds the numerous and varied errors minor—the errors 'nonetheless speak[ ] to a level of carelessness' that rightly calls into doubt [movant's] adequacy to be lead plaintiff") (citing *Goldman Sachs*, 2019 WL 4512775, at *5); *Goldman Sachs*, 2019 WL 4512774, at *5 (rejecting lead plaintiff applicant that "inadvertently omitted certain Class Period transactions in [] securities due to a clerical error" because it "nonetheless speak[s] to a level of carelessness, and causes me to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff") (internal quotations omitted); *Ophthotech Corp.*, 2018 WL 1307285, at *9 (refusing to appoint movant due to "errors and discrepancies" in transaction information in PSLRA certification because they "render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement").

Mr. Stella's errors to-date—at the outset of the case—show far more than a "non-speculative risk that [he] will not be adequate." *Horizon*, 2016 WL 3566238, at *3.[4]  His motion should be denied.

---

[4] *See also Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (rejecting Lead Plaintiff candidate based on "doubts about [its] ability to serve as the class representative because of . . . errors in the transaction records and loss calculations accompanying [its] motion"); *In re Vonage IPO Sec. Litig.*, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007) (proposed Lead Plaintiff inadequate because "initial certification was plagued with misinformation" including "misleading trading data").

**D.      Ever Capital and Ms. Román Declara Are the Most Adequate Plaintiff**

With Mr. Stella eliminated from consideration, Ever Capital and Ms. Román Declara are the only movant capable of satisfying the PSLRA's financial interest and adequacy and typicality requirements.  With losses of nearly $385,000 in connection with their investments in Fermi stock, Ever Capital and Ms. Román Declara assert losses that are larger than any qualified movant.  *See supra* at 4.

In addition to their substantial financial interest in the litigation, Ever Capital and Ms. Román Declara also satisfy the relevant adequacy and typicality requirements under Fed. R. Civ. P. 23 and have provided specific evidence of their active involvement in this litigation and commitment to represent the Class.  *See* ECF Nos. 43 at 10-15, 44-1, 44-3.  What's more, as an institutional investor, Ever Capital is precisely the type of entity that Congress intended to lead securities class actions, which further counsels in favor of its appointment with Ms. Román Declara.  *Ophthotech Corp.*, 2018 WL 1307285, at *8 (appointing movant because it "is an institutional investor, weighing in its favor").  Thus, Ever Capital and Ms. Román Declara are the presumptive "most adequate plaintiff" under the PSLRA.  Because there is no proof that undermines Ever Capital and Ms. Román Declara's typicality or adequacy, they are entitled to appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## CONCLUSION

For the reasons discussed above, Ever Capital and Ms. Román Declara respectfully request that the Court:  (1) appoint them to serve as Lead Plaintiff; (2) approve their selection of BFA as Lead Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: March 20, 2026

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

  */s/ Ross Shikowitz*
Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Javier Bleichmar
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (212) 789-2303
Facsimile: (415) 445-4020
amccall@bfalaw.com

*Counsel for Proposed Lead Plaintiff Ever Capital Investments S.V., S.A. and Maria Patricia Román Declara, and Proposed Lead Counsel for the Putative Class*

12

## CERTIFICATION OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 3,499 according to the word-processing system used to prepare the document.

Dated: March 20, 2026                              _/s/ Ross Shikowitz_____
                                                                    Ross Shikowitz

13