**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated, <br><br>      Plaintiff, <br><br> v. <br><br> FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED, <br><br>      Defendants. | Case No. 1:26-CV-00050-MKV <br><br> <u>CLASS ACTION</u> <br><br> **REPLY IN FURTHER SUPPORT OF SCOTT WEST'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL** |

Proposed Lead Plaintiff Scott West respectfully submits this Reply in further support of his Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel. ECF No. 32 (the "Motion"), and in opposition to the competing motions of New England Iron Workers (ECF Nos. 17, 59), Joseph Stella (ECF Nos. 23, 61), and Ever Capital Investments S.V., S.A. ("Ever Capital") and Maria Patricia Román Declara (ECF Nos. 43, 63).

As Mr. West stated in his Response, Mr. Stella and the group of Ever Capital and Ms. Román Declara both fail to satisfy the requirements of Rule 23. *See* ECF No. 62 at 2-4. Mr. Stella's certification contained material errors, and his options transactions render him atypical of the Class. *See id.* at 1-2. Ever Capital and Ms. Román Declara are also inadequate because they have not "proffer[ed] an evidentiary showing" that their "grouping would best serve the class." *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). They did not detail a specific plan to resolve future disputes, and their employer-employee relationship presents an inherent economic conflict of interest with Ms. Román Declara's would-be fiduciary duties to the putative class. *See City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 294 n. 5 (S.D.N.Y. 2010). While she remains employed, her interest in maintaining her job may prevent her from making decisions contrary to Ever Capital's wishes yet in the best interests of the putative class. And should she lose her position at Ever Capital, Ms. Román Declara's continued cooperation with Ever Capital might easily become compromised. Securities class actions often take years to litigate, and the class should not be saddled with a lead plaintiff that is presently conflicted and may in the future instead become unable to work together.

Ever Capital would also be subject to unique adequacy challenges because, unlike the retirement funds that typically seek to lead these cases, Ever Capital does not act as a fiduciary to

its clients. Ever Capital's Policy of Conflicts of Interest,[1] translated from Spanish to English by Mr. West's counsel, states that, "The Company has a clear procedure for managing and resolving conflicts of interest that may arise in its activities… In cases where it is not possible to completely eliminate the conflict, the Company will inform the client before providing the service, describing the nature and origin of the conflict and the measures taken to mitigate it." *See* Exhibit A at 12-13. Thus, conflicts "between the Company and its clients," "between different clients of the Company," and "between employees, managers, or related persons and the Company," among other conflicts, could occur and Ever Capital would proceed regardless. *Id.* at 6. For example, Ever Capital has stated that it may "operate[] on its own account on the same instruments on which it provides investment services to its clients" and that it may "obtain a financial benefit or avoid a loss at the expense of the client." *Id.* This type of conduct is anathema to the fiduciary responsibility of a lead plaintiff towards the putative class.

As the remaining movant with the largest financial interest in this case who also satisfies preliminary typicality and adequacy, Mr. West is entitled to the strong presumption that he is the "most adequate plaintiff." *See* 15 U.S.C. §77z-1(a)(3)(B)(i), §78u-4(a)(3)(B)(i). Once this presumption is triggered, it can be rebutted only "upon proof" that Mr. West is inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Because there is no proof suggesting Mr. West would be inadequate or atypical, Mr. West should be appointed lead plaintiff.

The only other remaining movant, New England Iron Workers, has not claimed that Mr. West would be inadequate or atypical. Mr. Stella and Ever Capital and Ms. Román Declara likewise made no such arguments. This is because no proof exists to rebut the presumption that Mr. West is the most adequate plaintiff. With no way to directly rebut Mr. West, New England

---

[1] Available at: https://evercapitalsv.com/es/mifid/.

Iron Workers instead argues it should be appointed because it is an institutional investor and that no other movants purchased shares traceable to Fermi's IPO. Both arguments fail.

*First*, New England Iron Workers' institutional status does not allow it to bypass the PSLRA's statutory selection process. *See* 15 U.S.C. §77z-1(a)(3)(B)(iii), §78u-4(a)(3)(B)(iii). New England Iron Workers' estimated loss of $120,216.39 is about half of Mr. West's estimated loss of $237,942.62. In other words, New England Iron Workers' interest in the outcome of this case is about half that of Mr. West. Even though Congress intended to encourage institutional investors, the PSLRA's preference for the investor with the larger loss is clear. *See McCormack v. Dingdong (Cayman) Ltd.*, 2023 WL 3750162, at *3 (S.D.N.Y. June 1, 2023) ("the lead plaintiff selection process is designed to incentivize investors with large financial incentives to participate in litigation").

Indeed, many courts have clarified that movants' "status as institutional investors do not provide any presumption that they would be more adequate lead plaintiffs than an individual investor with a larger financial interest." *See, e.g.*, *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1054 (N.D. Cal. 2010) (citing *In re Cavanaugh*, 306 F.3d 726, 737 n.20 (9th Cir. 2002) ("If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff.")); *Cavanaugh*, 306 F.3d 738 ("Each of the [PSLRA's] provisions serves the purposes disclosed in [its] legislative history, and together they are calculated to achieve the very goals the legislative history discusses."); S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.'").

3

Under the PSLRA, "Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (citations and quotation marks omitted). So "a district court's belief that 'another plaintiff may be "more typical" or "more adequate" is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'" *Id.* at 535-36 (quoting *Cavanaugh*, 306 F.3d at 732); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir.2001) ("Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'...."). New England Iron Workers' institutional status neither overrides nor displaces Mr. West's presumptive status as the most adequate plaintiff pursuant to the PSLRA's selection criteria.

***Second***, New England Iron Workers has not demonstrated that it is the only movant to purchase shares "traceable to" Fermi's Registration Statement for its October 1, 2025 IPO. *See* ECF No. 59 at 2. The purpose of Fermi's Form S-8, filed with the SEC on October 17, 2025, was the "registration of securities for employees" "pursuant to future grants of equity-based awards under the Fermi Inc. 2025 Long-Term Incentive Plan (the "2025 LTIP")." The 2025 LTIP granted "Incentive Stock Options, Nonqualified Stock Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Performance Awards, Dividend Equivalent Rights, Tandem Awards, and Other Awards." The Form S-8 was not a direct public offering or immediate stock sale to the market, and Mr. West purchased stock only three days later, on October 20, 2025. New

England Iron Workers does not allege that any Fermi employees could have sold or did in fact sell any stock granted from 2025 LTIP in the weeks after the Form S-8 was filed.

Moreover, none of the cases cited by New England Iron Workers indicate that a Form S-8 registering long-term incentive plan shares would have any impact on IPO traceability. The *Pivotal* and *Freshworks* opinions involved known, unregistered sales after lock-up periods expired and *Ariad* involved a secondary offering. *See* ECF No. 59 at 8; *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *9-*11 (N.D. Cal. Nov. 8, 2019); *Sundaram v. Freshworks Inc.*, 2023 WL 1819158, at *4-*5 (N.D. Cal. Feb. 8, 2023); *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016). In contrast, the Second Circuit in *Flag Telecom* upheld the decision that certain shares were "traceable" to an IPO even after employees exercised "a significant number of stock options pursuant to the Company's Long Term–Incentive Plan" because the defendants "produced no evidence that LTIP shares were actually sold in the market" at the relevant time. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009). Here, New England Iron Workers has not even shown that any employee options were exercised and has likewise produced no proof to show that LTIP shares were able to enter the market only three days after being registered.

Even if traceability was an issue, which it is not, it still would not lead to the appointment of New England Iron Workers. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.").

In sum, there are no facts that could dispute Mr. West's typicality and adequacy to represent the Class. As a result, Mr. West respectfully requests that the Court grant his Motion, appoint Mr.

5

West as Lead Plaintiff, and approve his selection of Block & Leviton as Lead Counsel. *See* 15

U.S.C. §77z-1(a)(3)(B)(iii), §78u-4(a)(3)(B)(iii).

DATED: March 27, 2026                    Respectfully submitted,

                                         */s/ Jeffrey C. Block*
                                         Jeffrey C. Block
                                         Jacob A. Walker (*pro hac vice* forthcoming)
                                         Sarah E. Delaney
                                         **BLOCK & LEVITON LLP**
                                         260 Franklin Street, Suite 1860
                                         Boston, MA 02110
                                         (617) 398-5600 phone
                                         jeff@blockleviton.com
                                         jake@blockleviton.com
                                         sarah@blockleviton.com

                                         *Counsel for Plaintiff Scott West*

## WORD COUNT CERTIFICATION

I, Sarah E. Delaney, certify that this Reply in further support of Mr. West's Motion contains 1,898 words and complies with the word count limitation of Local Civil Rule 7.1(c)

*/s/ Sarah E. Delaney*
Sarah E. Delaney
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
sarah@blockleviton.com

*Counsel for Plaintiff Scott West*

7