**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C., CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED, <br><br> Defendants. | Case No. 1:26-cv-00050-MKV <br><br> **REPLY IN SUPPORT OF MOTION TO APPOINT JOSEPH STELLA AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL** |

**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ......................................................................................................1

II.   ARGUMENT.............................................................................................................3

      A.    Mr. Stella is the Presumptive Lead Plaintiff.............................................3

      B.    Mr. Stella's Prompt Correction of a Technical Omission Confirms His Adequacy4

      C.    Ever Capital/Declara's and West's Focus on Option Trades is a Red Herring .......7

      D.    Mr. Stella Has Standing to Assert Section 11 Claims .............................................9

III.  CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Christiansen v. Spectrum Pharms., Inc.*,
2025 WL 2234041 (S.D.N.Y. Aug. 4, 2025)................................................................6

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ...........................................................8

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ...........................................................8

*Fed. Hous. Fin. Agency v. Bank of Am. Corp.*,
2012 WL 6592251 (S.D.N.Y. Dec. 18, 2012) ......................................................2, 7

*Francisco v. Abengoa, S.A.*,
2016 WL 3004664 (S.D.N.Y. May 24, 2016) ...........................................................4

*Grad v. Ironnet, Inc.*,
2022 WL 2789899 (E.D. Va. July 15, 2022) .............................................................8

*Hall v. Medicis Pharm. Corp.*,
2009 WL 648626 (D. Ariz. Mar. 11, 2009) ...............................................................9

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004)......................................................................................10

*Hochschuler v. G. D. Searle & Co.*,
82 F.R.D. 339 (N.D. Ill. 1978).................................................................................8

*Hoexter v. Simmons*,
140 F.R.D. 416 (D. Ariz. 1991) ...............................................................................9

*Karp v. Diebold Nixdorf, Inc.*,
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ...........................................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (2015) ......................................................................................5

*Micholle v. Ophthotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...........................................................6

*Plaut v. Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)...........................................................6

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)................................................................5

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................10

*Rodriguez v. DraftKings Inc.*,
    2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..........................................6

*In re Sequans Commc'ns S.A. Sec. Litig.*,
    289 F. Supp. 3d 416 (E.D.N.Y. 2018) ......................................................3

*In re Spero Therapeutics, Inc. Sec. Litig.*,
    2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ........................................5

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
    2016 WL 2986235 (S.D.N.Y. May 13, 2016) ....................................7, 10

*Ventrillo v. Paycom Software, Inc.*,
    2024 WL 1750658 (W.D. Okla. Apr. 23, 2024) ......................................8

## STATUTES

15 U.S.C. § 78u–4 *et seq.*................................................................3, 4, 10

## OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 23 ................................................1, 3

## I.    INTRODUCTION

The Competing Movants' oppositions are a study in distraction, attempting to bypass the Private Securities Litigation Reform Act's ("PSLRA") "largest financial interest" mandate by inflating technical, good-faith disclosures into disqualifying defects.  As the record confirms, Mr. Stella's financial stake in this litigation is peerless: his claimed losses of $532,776 exceed Ever Capital/Declara's aggregated losses by nearly $148,000, are more than double those of Mr. West, and are more than four times larger than those of the Iron Workers. ECF Nos. 49-2, 44-4, 37-3, 19-2. Likewise, Mr. Stella has made the preliminary, *prima facie* showing of typicality and adequacy under Rule 23.  His investment losses, which stem exclusively from his acquisition of Fermi common stock (ECF No. 49-2), were caused by the same alleged misstatements affecting the Class. Mr. Stella has demonstrated his commitment to transparently and actively overseeing this litigation. ECF Nos. 26-3, 49-1. Under the PSLRA, this showing creates a presumption that Mr. Stella is the "most adequate plaintiff"—a presumption the Competing Movants fail to rebut with their mischaracterizations of both the legal and factual significance of Mr. Stella's trading.

*First*, Mr. Stella's filing of an amended certification does not render him inadequate. The amendment resulted from Mr. Stella's misunderstanding that the securities at issue in the case included only common stock. ECF No. 49-1 at ¶¶4-5. This mistake was discovered due to his active oversight and proactive status call with counsel on March 18, 2026. ECF No. 49-1 at ¶5. Rather than being exposed through a challenge from a competing applicant, Mr. Stella self-identified his initial certification's omission of trades in Fermi derivative contracts and corrected the record within 24 hours. ECF Nos. 49-1, 49-2, 50. This level of diligence and coordination with counsel is exactly what the PSLRA demands of a lead plaintiff.

*Second*, Ever Capital/Declara's and West's arguments that Mr. Stella's option trading may subject him to unique reliance-based defenses are meritless. ECF No. 62 at 2; ECF No. 63 at 4-8.

The principal thrust of the litigation is a strict liability claim under Section 11 of the Securities Act tied to alleged material misstatements and omissions in Fermi's IPO Registration Statement. ECF No. 1 (Cmpl.) at p. 27. Reliance is not an element of a Section 11 claim. *Fed. Hous. Fin. Agency v. Bank of Am. Corp.*, 2012 WL 6592251, at *2 (S.D.N.Y. Dec. 18, 2012). Thus, any speculation regarding Mr. Stella's investment calculus in acquiring Fermi shares cannot possibly form the basis of a unique defense to the Section 11 claim.

Likewise, neither Ever Capital/Declara nor West has not offered "proof" that Mr. Stella cannot invoke the *Basic* presumption of reliance for his Section 10(b) claims, or that he will go about proving damages differently from other class members. To suit their challenges, the Competing Movants mischaracterize the nature of the put option trade from which Mr. Stella acquired his Fermi shares. ECF No. 62 at 2; ECF No. 63 at 4-8. Far from a speculative bet on market volatility, Mr. Stella's strategy represented a value-based commitment to the Company -- a calculated decision to become a long-term shareholder at a $15 per share strike price that he believed was fundamentally sound based on the then-available public information. When Fermi shares reached a market price of $15.00 per share on November 21, 2025, they were assigned to Mr. Stella and he parted with $1,264,500 to acquire 84,300 shares of Fermi common stock, thereby assuming the exact same investment position as any investor who placed a purchase order at $15.00 per share on the open market that day. Tarnor Reply Decl., Ex. A (11/21/2025 FRMI Daily Price Range). Thus, contrary to the Competing Movants' suggestion, Mr. Stella's losses were not driven by "duration, maturity, volatility, and interest rates," but by the subsequent plummet in the value of the Fermi common stock he held. Because Mr. Stella's injury stems exclusively from the artificially inflated price he paid for these shares, Mr. Stella's Section 10b claim is just like any other class member who purchased Fermi stock and suffered the same economic harm.

*Finally*, the Iron Workers' traceability challenge to Mr. Stella's Section 11 claim based on Fermi's October 17, 2025 S-8 filing is unsupported. An analysis of the October 17, 2025 S-8 filing confirms that these shares were reserved for *future* employee grants subject to vesting schedules. ECF No. 60-2 at Explanatory Note (4 of 10).  Tellingly, the Iron Workers offer no proof that these shares were trading in the public market during Mr. Stella's November 21, 2025 acquisition of common stock.

At bottom, Mr. Stella is the most adequate plaintiff because he has the most to recover. His proactive leadership and substantial equity position ensure that the interests of the Class will be protected with the highest degree of motivation.

## II.    ARGUMENT

### A.    Mr. Stella is the Presumptive Lead Plaintiff

The PSLRA establishes a clear procedure for the appointment of a lead plaintiff, creating a rebuttable presumption that the "most adequate plaintiff" is the movant that has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). There is no serious dispute that Mr. Stella has the largest financial interest of any movant and that he has made a prima facie case of typicality and adequacy. Accordingly, Mr. Stella is the presumptive lead plaintiff.

The Iron Workers' suggestion that it should be appointed lead plaintiff based on its mere status as an institutional investor is an attempt to bypass this statutory mandate. ECF No. 59 at 3. While the PSLRA's legislative history reflects a general preference for institutional investors, the text of the statute is unambiguous: the presumption of adequacy is triggered by the largest economic stake, not the identity of the filer. As courts in this Circuit have routinely held, the PSLRA does not create a per se rule that institutional investors are preferred over individual investors. *See In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 422 (E.D.N.Y. 2018)

(holding that institutional investor's status did not overcome individual investors' substantially larger financial interest for lead plaintiff appointment); *Francisco v. Abengoa, S.A.*, 2016 WL 3004664, at *5 (S.D.N.Y. May 24, 2016) (holding that institutional investor status could not overcome presumption favoring plaintiffs with undeniably largest financial interest).

Similarly, the Iron Workers' suggestion that Mr. Stella's residency in Puerto Rico renders him an "overseas" plaintiff is a frivolous diversion. ECF No. 59 at 9. Mr. Stella is a U.S. citizen residing in a U.S. territory whose geographic location has no bearing on his ability to rigorously prosecute this action in the S.D.N.Y.

**B.      Mr. Stella's Prompt Correction of a Technical Omission Confirms His Adequacy**

The presumption in favor of Mr. Stella "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Competing Movants principally attempt to rebut the presumption by pointing to Mr. Stella's amended certification, arguing that his subsequent disclosure of transactions in Fermi derivative option contracts during the Class Period somehow demonstrates he will not fairly and adequately protect the interests of the class. ECF No. 59 at 4-5; ECF No. 62 at 2; ECF No. 63 at 9-10. Their argument fails as a matter of law.

As explained in his Amended Certification, Mr. Stella's initial failure to disclose the options transactions was the result of an innocent misunderstanding that the class definition of Fermi "securities" for disclosure purposes was broader than Fermi common stock. ECF No. 49-1 at ¶5. Immediately upon learning that derivative contracts were included in the putative Class's definition on a status call with counsel on March 18, Mr. Stella moved to ensure the record was complete. ECF No. 49-1 at ¶5. Mr. Stella proactively filed and provided notice of an amended

certification and loss chart within 24 hours of that meeting. ECF Nos. 49-1, 49-2, 50. Courts within this Circuit and throughout the country routinely recognize that such "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of the adequacy requirement" for appointment as lead plaintiff. *Khunt v. Alibaba Grp. Holding Ltd*., 102 F. Supp. 3d 523, 538-39 (2015) (quoting *Niederklein v. PCS Edventures!.com, Inc*., 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011).

The Competing Movants' suggestion that Mr. Stella's omission of the option transactions was an inexcusable mistake is without merit. ECF No. 59 at 4-5; ECF No. 62 at 2; ECF No. 63 at 9-10. Mr. Stella's understanding of the initial disclosure requirements was reasonably informed by the narrow scope of the pleadings; the operative Complaint speaks exclusively of losses sustained on Fermi common stock (Cmplt. at ¶¶ 5-6, 14, 38, 47, 55-56). The pleading makes no mention of Fermi derivative contracts. Consequently, after reading a complaint focused solely on Fermi share price declines, it did not occur to Mr. Stella that his option trades were relevant to the litigation's scope or the class definition. ECF No. 49-1 at ¶5. As courts in this District have recognized, "[t]he goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes[.]" *Reitan v. China Mobile Games & Ent. Grp., Ltd*., 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014).

Furthermore, courts routinely permit amendments such as Mr. Stella's where the corrections "do not prejudice any party to this litigation" and where there is "no evidence of bad faith or intent to deceive the court." *In re Spero Therapeutics, Inc. Sec. Litig*., 2022 WL 4329471, at *8 (E.D.N.Y. Sept. 19, 2022) (citing *Silverberg v. DryShips Inc*., 2018 WL 10669653, at *3 n.2 (E.D.N.Y. Aug. 21, 2018) and *In re SLM Corp. Sec. Litig*., 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012)). Critically, Mr. Stella filed and provided notice of his amended certification before the Competing Movants filed their opposition and reply briefs. By doing so, he ensured that both the

Court and the Competing Movants had a full and fair opportunity to review and address his complete trading history within the normal briefing schedule.

Likewise, Mr. Stella's amendment did not manipulate the financial interest rankings; he was the presumptive lead plaintiff before the amendment and remains so today. The Iron Workers' suggestion that these newly disclosed trades "substantially reduced" Mr. Stella's financial interest is baseless. ECF No. 59 at 4. In reality, these transactions had zero impact on Mr. Stella's claimed Section 11 losses of $532,776, and only minimally reduced his Section 10(b) losses by $37,649, from $494,981.50 to $457,332.50—a variance of only 7% that does not alter his status as the movant with the largest claimed Section 10(b) losses as well. *Cf*. ECF Nos. 26-2, 49-2.

The circumstances here thus stand in sharp contrast to the cases cited by the Competing Movants, which involved demonstrably false statements intended to inflate claimed losses or other significant defects that called the movant's candidness into question.[1] None apply here. Because Mr. Stella's correction was self-identified, readily explained, and non-prejudicial, it only serves to confirm his adequacy and commitment to the Class.

---

[1] *Cf. Christiansen v. Spectrum Pharms., Inc.*, 2025 WL 2234041, at *3 (S.D.N.Y. Aug. 4, 2025) (lead plaintiff "violated class members' trust by divulging confidential settlement information to . . . a non-party," and he was "fixated on matters that are irrelevant to this case," including a conspiracy theory); *Rodriguez v. DraftKings Inc*., 2021 WL 5282006, at *5-6, *9 (S.D.N.Y. Nov. 12, 2021) (movant's "significant" and "numerous and varied errors" and inconsistencies rose to the level of "slovenliness" and therefore called into doubt his adequacy where there were myriad inconsistencies between the movant's PSLRA certification and loss chart, omissions in the PSLRA certification, and incorrect treatment of sales as losses); *Karp v. Diebold Nixdorf, Inc*., 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (finding that the movants overcalculated their losses by 34%); *Plaut v. Goldman Sachs Grp., Inc*., 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant because he failed to make any attempt to explain glaring error in his certification **and** he belatedly filed an amended complaint 20 days after the lead plaintiff deadline to inflate claimed losses); *Micholle v. Ophthotech Corp*., 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) (the court found unexplained, unresolved issues with the trade dates and prices claimed to have paid and inflated loss calculations).

**C.      Ever Capital/Declara's and West's Focus on Option Trades is a Red Herring**

Ever Capital/Declara and West also attempt to paint Mr. Stella as "atypical" by focusing on his option contract transactions. ECF No. 62 at 2; ECF No. 63 at 4-8. These arguments rely on a fundamental mischaracterization of the facts and the legal standards governing lead plaintiff appointments.

*First*, the vast majority of Mr. Stella's derivative transactions were sales of call options that expired and resulted in gains. ECF No. 49-2. These profitable trades therefore do not form the basis of his claims in this litigation.

*Second*, the Competing Movants' theory that Mr. Stella may be subject to unique reliance-based defenses because he acquired his Fermi shares via put assignments is flawed.  Reliance is not even an element to Section 11, the primary claim in this action. *Fed. Hous. Fin. Agency*, 2012 WL 6592251, at *2.

*Third*, the Competing Movants' suggestion that Mr. Stella may not be able to invoke the *Basic* presumption of reliance on his Section 10b claim or may have to prove his damages differently from other class members is without merit.  Mr. Stella's selling of a put option was a bullish investment strategy that relies on the integrity of the market. By writing put contracts with a $15.00 strike price, Mr. Stella was making a definitive value proposition: that Fermi common stock was a sound long-term investment at that price point. This decision was based on the then-available public information, which necessarily incorporated Fermi's disclosures and omissions.

Furthermore, Mr. Stella's acquisition of the Fermi shares was not divorced from the market price, as Ever Capital/Declara and West suggest. ECF No. 62 at 2, ECF No. 63 at 4. At the time of assignment and Mr. Stella's acquisition of the shares on November 21, 2025, Fermi common shares were trading at $15.00 on the open market. Tarnor Reply Dec., Ex. A (showing on November 21, 2025 FRMI experienced a high-low daily trading range with a low of $13.64 and a

high of $15.90). In satisfying his contractual obligations, Mr. Stella parted with $1,264,500 to acquire 84,300 shares of Fermi common stock at the price of $15.00 per share. Because the $15.00 market price per share at the time of his acquisition was artificially inflated by Defendants' misrepresentations, Mr. Stella's Section 10b claims are substantively identical to that of any investor who purchased shares through a standard trade order. *See, e.g., Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 347 (N.D. Ill. 1978) (holding that "the fact that the ultimate acquisition of the stock was involuntary is immaterial to the [typicality] requirement" and that "the put option seller must prove the same case as the common stock purchaser would.")

Relying on sound bites from cases like *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020), *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) and their progeny, the Competing Movants erroneously suggest that Mr. Stella's trading would introduce factual issues irrelevant to stockholder class members, like "strike price, duration, maturity, volatility, and interest rates." ECF No. 62 at 2, n.2; ECF No. 63 at 7. But these are exactly the type of speculative and hypothetical arguments that several courts have rejected in finding *ProShares*' and *Allergan*'s reasoning as to option traders unpersuasive. *See, e.g.*, *Grad v. Ironnet, Inc.*, 2022 WL 2789899, at *5 (E.D. Va. July 15, 2022) (rejecting the reasoning of *Allergan* and *ProShares* as speculative and noting that competing movant offers no "specific evidence" which suggests that "the nature of [Shunk's] options, the history of their purchase and sale, or some other factor [makes Shunk] inadequate to represent the class."); *see also Ventrillo v. Paycom Software, Inc.*, 2024 WL 1750658, at *6, n.7 (W.D. Okla. Apr. 23, 2024) (rejecting application of *Allergan*, *ProShares* and progeny to investor who traded in both put options and common stock).

The strike price, maturity, and volatility are irrelevant to Mr. Stella's 10b claims. Mr. Stella's losses are derived exclusively from his acquisition and holding of Fermi common stock, the value of which plummeted when the truth behind Defendants' alleged misstatements and omissions were revealed. These ancillary derivative details do not alter the calculation of his damages or the theory of liability. From the moment of assignment, Mr. Stella's position was identical to every other member of the Class who purchased common stock on the open market: he paid an artificially inflated price for his shares due to the alleged wrongful conduct. Because both Mr. Stella's claims and interests are perfectly aligned with the Class, he remains a typical representative. *See Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at \*4 (D. Ariz. Mar. 11, 2009) (determining that a party who had "purchased and sold put options" was not so atypical as to preclude selection as lead plaintiff, especially given the lack of "evidence" as to "the history of [the] purchase and sale" of the options); *Hoexter v. Simmons*, 140 F.R.D. 416, 420–21 (D. Ariz. 1991) (concluding that a put-option purchaser is not atypical).

**D.     Mr. Stella Has Standing to Assert Section 11 Claims**

The Iron Workers' challenge to Mr. Stella's standing to assert a Section 11 claim—based on the filing of a Form S-8 Registration Statement on October 17, 2025—is meritless. The October 17, 2025 Form S-8 did not suddenly flood the market with non-IPO shares; rather, that filing merely registered shares that "may be issued . . . pursuant to future grants" under the Fermi Inc. 2025 Long-Term Incentive Plan. ECF No. 60-2 at Explanatory Note. Any shares granted after that mid-October filing would be subject to standard corporate vesting schedules. The Iron Workers offers no proof that these yet-to-be-issued employee shares vested, were exercised, sold and entered the public market by November 21, 2025 when Mr. Stella acquired his 84,300 shares.

In any event, the Iron Workers' tracing argument applies exclusively to Mr. Stella's Section 11 claim of the Securities Act; it has no bearing on Mr. Stella's standing to assert claims under

Section 10(b) of the Exchange Act, which remains uncontested. The Second Circuit has explicitly rejected the Iron Workers' premise that a lead plaintiff must have standing to sue on every available cause of action at the appointment stage. *See*, *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."). The Iron Workers advocate for a standing-first approach that ignores the mandate of the PSLRA, which requires this Court to select the movant with the largest financial stake. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011).

Finally, the Iron Workers' alternative request for co-lead status is unnecessary. Any hypothetical concern regarding standing can be protected without subverting the PSLRA's preference for the largest stakeholder. Consistent with the Act, a lead plaintiff may simply "add 'named plaintiffs to aid the lead plaintiff in representing a class'" at a later stage. *In re Third Ave. Mgmt. LLC Sec. Litig.*, 2016 WL 2986235, at *3 (S.D.N.Y. May 13, 2016) (quoting *Hevesi*, 366 F.3d at 83).

### III.   CONCLUSION

For the reasons discussed above and in his other supporting briefs (ECF Nos. 23, 61), Mr. Stella respectfully requests that the Court appoint him Lead Plaintiff and approve his selection of Hagens Berman as Lead Counsel for the Class.

DATED: March 27, 2026                    Respectfully Submitted,

                                                   HAGENS BERMAN SOBOL SHAPIRO LLP

                                                   By   */s/ Nathaniel A. Tarnor*
                                                      NATHANIEL A. TARNOR

                                                 594 Dean Street, Suite 8
                                                 Brooklyn, NY11238
                                                 Telephone: (212) 752-5455

Facsimile:  (917) 210-3980
nathant@hbsslaw.com

Lucas E. Gilmore (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
lucasg@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Joseph Stella*

## WORD COUNT COMPLIANCE CERTIFICATE

I, Nathaniel A. Tarnor, certify that this brief complies with Local Civil Rule 7.1(c).

I further certify that, in preparation of this brief, I used Microsoft Word, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word court.

I further certify that the above-referenced brief contains 3,349 words.

*/s/ Nathaniel A. Tarnor*

NATHANIEL A. TARNOR

**CERTIFICATE OF SERVICE**

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Nathaniel A. Tarnor
NATHANIEL A. TARNOR