**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE LUPIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FERMI INC., TOBY NEUGEBAUER, MILES EVERSON, GRIFFIN PERRY, JACOBO ORTIZ, MARIUS HAAS, RICK PERRY, CORDEL ROBBIN-COKER, LEE MCINTIRE, UBS SECURITIES LLC, EVERCORE GROUP L.L.C, CANTOR FITZGERALD & CO., MIZUHO SECURITIES USA LLC, MACQUARIE CAPITAL (USA) INC., ROTHSCHILD & CO US INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, TRUIST SECURITIES, INC., BERENBERG CAPITAL MARKETS LLC, and PANMURE LIBERUM LIMITED, <br><br> Defendants. | Case No. 1:26-cv-00050-MKV <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THE MOTION OF EVER CAPITAL INVESTMENTS S.V., S.A. AND**
**MARIA PATRICIA ROMÁN DECLARA FOR APPOINTMENT AS LEAD PLAINTIFF**
<u>**AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

A.    Mr. Stella's Options-Related Transactions are Disqualifying ........................................... 2

B.    Mr. Stella's Initial PSLRA Certification Contained Disqualifying Errors ......................... 6

C.    The Competing Movants Fail to Provide "Proof" to Rebut the Presumption in Favor of Appointing Ever Capital and Ms. Román Declara ............................................................. 6

      1.    Ever Capital and Ms. Román Declara are an Appropriate Group .......................... 6

      2.    Iron Workers is not "the sole institutional movant" ............................................. 9

      3.    Ever Capital and Ms. Román Declara Can Assert Securities Act Claims .............. 9

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Canson v. WebMD Health Corp.*,
  2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011).............................................................................. 7

*Chahal v. Credit Suisse Group AG*,
  2018 WL 3093965 (S.D.N.Y. June 21, 2018) ............................................................................ 8

*Chauhan v. Intercept Pharmaceuticals*,
  2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) .............................................................................. 5

*City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*,
  2025 WL 743986 (S.D.N.Y. Mar. 6, 2025)................................................................................. 5

*City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*,
  2019 WL 13167890 (E.D.N.Y. Dec. 23, 2019).......................................................................... 7

*City of Monroe Employees' Retirement System v. Hartford Financial Services Group, Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ............................................................................................... 8

*Cook v. Allergan PLC*,
  2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)............................................................................ 5

*David v. British American Tobacco P.L.C.*,
  2024 WL 4351311 (E.D.N.Y. Sep. 30, 2024) ........................................................................... 6

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ....................................................................... 1, 4

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
  927 F. Supp. 2d 88 (S.D.N.Y. 2013) ......................................................................................... 4

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ...................................................................................................... 10

*In re Arqit Quantum Inc. Sec. Litig.*,
  774 F. Supp. 3d 505 (E.D.N.Y. Mar. 28, 2025)..................................................................... 9, 10

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. May 17, 2025) ......................................................................... 8

*In re Sequans Commc'ns S.A. Sec. Litig.*,
  289 F. Supp. 3d 416 (E.D.N.Y. 2018) ....................................................................................... 8

*In re Sesen Bio, Inc. Sec. Litig.*,
   2022 WL 3996712 (S.D.N.Y. Sep. 1, 2022) ................................................................. 7

*In re Solar City Corp. Securities Litigation*,
   2017 WL 363274, at *6-7 (N.D. Cal. Jan. 25, 2017) ................................................... 6

*Jaramillo v. Dish Network Corp.*,
   2023 WL 5312062 (D. Colo. Aug. 16, 2023) ............................................................... 5

*Jiang v. Chirico*,
   2024 WL 967084 (S.D.N.Y. Mar. 5, 2024) ................................................................. 5

*Khunt v. Alibaba Group Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. May 1, 2015) ............................................................. 6

*Maeshiro v. Yatsen Holding Ltd.*,
   2023 WL 4684106 (S.D.N.Y. July 21, 2023) ........................................................... 2, 7

*Manchin v. PACS Group, Inc.*,
   2025 WL 460775 (S.D.N.Y. Feb. 11, 2025) ............................................................... 10

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018 .............................................................. 1

*Rodriguez v. DraftKings Inc.*,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ........................................................... 1, 6

*Schaffer v. Horizon Pharma Plc*,
   2016 WL 3566238 (S.D.N.Y. June 27, 2016) .............................................................. 4

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................................ 2

*Teroganesian v. Sw. Airlines Co.*,
   2023 WL 4565464 (S.D. Tex. July 15, 2023) .............................................................. 5

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. May 29, 2019) ............................................................ 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ......................................................................... 8

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................. 1, 8

## Rules

Fed. R. Civ. P. 23 ................................................................................................................... 1

## PRELIMINARY STATEMENT

Only Ever Capital and Ms. Román Declara satisfy the PSLRA's requirements for appointment. With losses of nearly $385,000, their financial interest is larger than any qualified movant. Ever Capital and Ms. Román Declara also satisfy the relevant adequacy and typicality requirements under Rule 23 and have provided specific evidence of their active involvement in this litigation and commitment to represent the Class. *See* ECF Nos. 43 at 6-11, 44-1, 44-3. What's more, as an institutional investor, Ever Capital is precisely the type of entity that Congress intended to lead securities class actions, which further counsels in favor of its appointment with Ms. Román Declara. *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *10 (S.D.N.Y. Mar. 13, 2018) (appointing movant because it "is an institutional investor, weighing in its favor").

While Mr. Stella claims a larger financial interest than Ever Capital and Ms. Román Declara, he is not an adequate class representative. All of Mr. Stella's loss is driven by transactions in third-party stock options, namely, the sale of put options. His own cited authority recognizes that "[a]ppointing [a movant], whose losses overwhelmingly reflect his sale of put options, raises issues of his typicality and adequacy." *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) cited at ECF No. 61 at 3-4.

What's more, Mr. Stella's PSLRA certification contained significant errors, omitting over 99% of the transactions that needed to be disclosed, which courts have held is disqualifying. *See Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (movant inadequate based on "clerical error" impacting "PSLRA certification"). Because Mr. Stella is ineligible for appointment, Ever Capital and Ms. Román Declara are the presumptive Lead Plaintiff.

No movant puts forward "proof" sufficient to rebut the presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mr. West piles speculation on top of speculation that Ever Capital and Ms.

Román Declara's joint leadership "could result in disputes" "[s]hould" their relationship change in the future. ECF No. 62 at 3. Courts have routinely rejected such conjecture. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (rejecting "speculation as to such a possibility" that lead plaintiff group would not adequately represent class due to "conflicts or other reasons"). The only proof in the record, Ever Capital and Ms. Román Declara's Joint Declaration (ECF 44-1), demonstrates that they are sophisticated, have a long-standing preexisting relationship and worked together for years, see each other every business day, and are fully capable of supervising counsel and this litigation. *Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at *7 (S.D.N.Y. July 21, 2023) (finding two sophisticated investor friends who filed a joint declaration could "function cohesively and independently of their counsel" given their pre-existing relationship and efforts already undertaken in the litigation).

Iron Workers' contention that it should be appointed Lead or Co-Lead Plaintiff because it is the "sole institutional movant" (ECF No. 59 at 1) is wrong on the facts, as discussed above. As is its claim that it "is the only movant which indisputably has standing on the Securities Act claims[.]" *Id.* at 5. Ever Capital and Ms. Román Declara also have standing to assert Securities Act claims because their purchases are traceable to the IPO. *See* ECF No. 43 at 6; *infra* at 9-10.

**ARGUMENT**

**A.    Mr. Stella's Options-Related Transactions are Disqualifying**

Mr. Stella claims in his opposition brief that "the entirety of his . . . loss stem[s] from common stock . . . Consequently, the focus of discovery and trial on Mr. Stella's claims will remain squarely on the common stock like the majority of the Class." ECF No. 61 at 5-6.

This is an incomplete recitation of the facts and is wrong. In fact, when Mr. Stella decided to invest in Fermi, he sold stock options and did not buy stock. *See* ECF No. 49-1 at 4-6. All the stock Mr. Stella later obtained stems from his sales of derivative put options. *Id.* This means that

2

Mr. Stella did not buy Fermi stock through an ordinary purchase on the open market at market prices. In fact, Mr. Stella did not decide to buy Fermi stock at all. Rather, Mr. Stella received the stock involuntarily because his counterparty "assigned" the stock to Mr. Stella at a pre-determined price, which was different from the market price at the time. *See* ECF No. 63 at 4-9.

Specifically, from November 4, 2025 through November 13, 2025, Mr. Stella sold 943 put contracts with a strike price of $15 per share at prices ranging from $0.14 to $0.30 per contract. ECF No. 49-1 at 5-6. If the put buyer exercised the options, Mr. Stella was obligated to purchase Fermi stock at the "strike price" of $15, even though the market price for Fermi stock was higher during that time, ranging from a high of $28.90 per share on November 5, 2025 to a low of $17.20 per share on November 13, 2025. On November 21, 2025, the put buyer exercised 843 options and "assigned" 84,300 shares to Mr. Stella at the pre-determined strike price of $15. *Id.* at 4.

Around the time that Mr. Stella sold these put options with a $15 per share strike price, he also sold call options with higher strike prices of $25 and $40 per share. *Id.* at 4-6. The puts and calls expired on the same day. Simultaneously selling puts and calls as Mr. Stella did here is called a "short strangle." A short strangle is a trading strategy where an "investor is looking for a steady stock price during the life of the options" and wants to "[e]arn income from selling premium."[1]

Defendants will assuredly seize on Mr. Stella's unique trading in options to argue that he is not an adequate class representative. Defendants will probe the nature of Mr. Stella's options trading strategy and the information he used to make investment decisions to show that he—and by extension the putative Class—is not entitled to a presumption of reliance or is otherwise

---

[1] The Options Industry Council, Short Strangle, available at https://www.optionseducation.org/strategies/all-strategies/short-strangle (last visited Mar. 27, 2026).

inadequate.[2]  Whether the defense succeeds is irrelevant—it will become a focus of the litigation, distracting from the central issue, did Fermi misrepresent the nature of its business?  *See Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (refusing to appoint movant based on "non-speculative risk that [he] will not be adequate").

Mr. Stella's own cited authority recognizes that he is not an adequate class representative. Judge Buchwald in *ProShares* disqualified a movant that incurred roughly 80% of its loss from its "obligation 'to purchase common stock as a result of his writing of put options'" and only the remainder "could possibly be attributable to regular common stock purchases."  *See ProShares*, 2020 WL 7698321, at *3 cited at ECF No. 61 at 3-4.  This is because the options-trading movant may not have been "motivated by the same market incentives as class members who traded shares on the open market" and "factual issues unique to [the options-trading movant] 'would likely threaten to become the focus of the litigation'" if it were to be appointed.  *Id.* at *4.

Here, ***all*** of Mr. Stella's loss is derived from selling puts.  Numerous other courts have found options traders like Mr. Stella to be inadequate. "Parties who exclusively sell put options, or who only acquire common stock involuntarily when put options they have written are exercised—are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions.  While put option sellers and common stock purchasers may rely on the same general assumption that the underlying stock price

---

[2] To establish liability under Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must prove that it relied on the fraudulent statements. *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 97 (S.D.N.Y. 2013).  Reliance is presumed when the security at issue trades in an "efficient market."  *Id.* at 98.  However, the presumption can be rebutted if the defendant demonstrates that the plaintiff did not rely on the market price at the time it purchased stock and, without the presumption, the individualized issues concerning reliance will predominate over class-wide issues and prevent the class from obtaining certification. *See id.* at 101-102 (entering judgment for defendant).

will rise (or at least not decrease) . . . there are also significant differences that draw into question the adequacy of put sellers as class representatives.  For example, put sellers operate on different time horizons than do common stock purchasers.  Puts are time-limited; a put seller bets that a company's stock value will not decline to a specified strike price within the life of an option.  Common stock purchasers do not[.]" *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023); *see also Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at *5 (S.D. Tex. July 15, 2023) (movant who "suffered all his losses in connection with sales of Southwest put options . . . [is] atypical"); ECF No. 63 at 5-6 (collecting cases).

Courts even routinely reject movants who incurred ***most*** of their losses on option trading as atypical.  *See Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (refusing to appoint movant when "60% of his claimed losses came as a result of options trading" because "[h]e is not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder"); *City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, 2025 WL 743986, at *3 (S.D.N.Y. Mar. 6, 2025) (movant "atypical because their losses arose primarily from options-related transactions and short sales. . . If the Court were to appoint the [movant], it is likely that their options trading and short selling would become a focal point at class certification, with unique questions raised about their resulting losses").

Tellingly, Mr. Stella does not cite a case in which a Court appointed a movant who incurred all its losses from put sales, let alone one that simultaneously sold calls as part of a short strangle trading strategy.  The only two cases cited by Mr. Stella to support his assertions—*Chauhan v. Intercept Pharmaceuticals*, 2021 WL 235890, at *7 (S.D.N.Y. Jan. 25, 2021) and *Jiang v. Chirico*, 2024 WL 967084, at *12 (S.D.N.Y. Mar. 5, 2024)—are distinguishable because the movants there made open-market purchases of stock.  *See* ECF No. 61 at 5-6.

**B.**     **Mr. Stella's Initial PSLRA Certification Contained Disqualifying Errors**

Mr. Stella contends that his erroneous PSLRA certification is nothing more than an immaterial and inadvertent mistake.  *See* ECF No. 61 at 4-5.  It is not credible to claim that the error is immaterial.  The amended certification did not just add a few new trades.  It added over 150 additional trades on top of the ***single*** trade that Mr. Stella disclosed in his initial certification, showed that Mr. Stella's purchase of stock did not occur on the open market, and fundamentally changed the adequacy of Mr. Stella as a class representative. *See* ECF No. 49-1.

Courts routinely deny Lead Plaintiff applications based on erroneous certifications with less important mistakes than Mr. Stella's.  *See e.g., DraftKings*, 2021 WL 5282006, at *9 (finding inadequate movant that submitted an accurate loss chart but committed a "clerical error" that impacted certification); *see also* ECF No. 63 at 10 (collecting cases).[3]

**C.**     **The Competing Movants Fail to Provide "Proof" to Rebut the Presumption in Favor of Appointing Ever Capital and Ms. Román Declara**

**1.**     **Ever Capital and Ms. Román Declara are an Appropriate Group**

Of the eight other movants, the only movant to challenge Ever Capital and Ms. Román Declara's collaboration is Mr. West.  *See* ECF No. 62 at 3-4.  Mr. West's contentions are wrong, ignore the evidence before the Court and well-established precedent.

As set forth in greater detail in their opening brief, Ever Capital and Ms. Román Declara are a paradigmatic Lead Plaintiff group.  *See* ECF No. 43 at 8-11.  "[I]n this circuit, it is permissible for small, cohesive groups . . . to be appointed collectively as lead plaintiff . . . as long those groups

---

[3]  Mr. Stella's cited authority is distinguishable.  In *Khunt v. Alibaba Group Holding Ltd.*, the error concerned the authority of the signatory.  102 F. Supp. 3d 523, 538 (S.D.N.Y. May 1, 2015).  *David v. British American Tobacco P.L.C.* concerned "differences in the rounding of the prices per share" where the movant "easily satisfies the typicality prong[.]"  2024 WL 4351311, at *6-7 (E.D.N.Y. Sep. 30, 2024).  *In re Solar City Corp. Securities Litigation*, found "a transposing error" to be "troubling" but the opposing movant "fail[ed] to identify [] any individualized defenses that are likely to arise from [the] error," unlike here.  2017 WL 363274, at *6-7 (N.D. Cal. Jan. 25, 2017). !

are not too large and have evinced an ability (and a desire) to work collectively to manage the litigation so that they are able to cooperate[ ] and pursu[e] the litigation separately and apart from their lawyers." *In re Sesen Bio, Inc. Sec. Litig.*, 2022 WL 3996712, at *2 (S.D.N.Y. Sep. 1, 2022) (citations and internal quotations omitted).

Here, Ever Capital and Ms. Román Declara's Joint Declaration establishes that they are a small and cohesive group: (i) of just two investors; (ii) who are sophisticated and have substantial experience in financial markets; (iii) have a preexisting relationship, worked together for eight years and see each other every business day; (iv) have a substantial stake in the litigation, and Ever Capital asserts the single largest loss of any qualified movant; (v) already demonstrated active oversight of the litigation; and (vi) decided to seek joint Lead Plaintiff appointment because they believe their partnership will benefit the Class. *See* ECF No. 44-1 at ¶¶3-11.

Ever Capital and Ms. Román Declara is precisely the type of group courts in this District and throughout the country have identified as ideally situated to represent the Class. *See Yatsen*, 2023 WL 4684106, at *7 (concluding that movants "have the ability to function cohesively and independently of their counsel" due, in part, to their "preexisting relationship"); *City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, 2019 WL 13167890, at *5 (E.D.N.Y. Dec. 23, 2019) (where movants "aver that they maintain a longstanding professional relationship" predating the litigation, "skepticism" of proposed lead plaintiff group "not warranted"); *Canson v. WebMD Health Corp.*, 2011 WL 5331712, at *3 (S.D.N.Y. Nov. 7, 2011) ("no evidence that [proposed group] combined their litigation efforts in bad faith" where "the two parties have a pre-existing relationship and have stated their intention to work together on behalf of the class").

Tellingly, Mr. West does not contend that Ever Capital and Ms. Román Declara are currently unable to oversee the litigation as a cohesive group. Rather, Mr. West hypothesizes—

without citing authority—that Ever Capital and Ms. Román Declara's relationship "could later result in disputes" "[s]hould" it change in the future. ECF No. 62 at 3. This is precisely the type of speculation that courts routinely reject as insufficient. *See, e.g., Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 416-17 (E.D. Pa. May 29, 2019) (appointing group where movants "produced no evidence, as opposed to [] speculation, that [group] would not be able to function"). If speculation that there may be a disagreement was sufficient, every group would be disqualified, including married couples that could separate, or friends who could become estranged. This would render the text of the PSLRA allowing "group[s]" a dead letter. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Similarly, Mr. West nit-picks the Joint Declaration to claim that it does not give specifics as to how Ever Capital and Ms. Román Declara will resolve potential disagreements, should they ever arise. *See* ECF No. 62 at 3. Again, it is conjecture to claim that there might be a future disagreement, and it is a strange argument to make given Mr. Canadell Mora and Ms. Román Declara work together every day collaborating and resolving any different viewpoints they may have. *See* ECF No. 44-1 at ¶¶3-6. Regardless, courts routinely appoint groups that "attest[] to manage the litigation efficiently, achieve the best possible result," and "need not spell out chapter and verse their conflict resolution mechanisms[.]" *See, e.g., In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 424 n.9 (E.D.N.Y. 2018); *Chahal v. Credit Suisse Group AG*, 2018 WL 3093965, at *6 (S.D.N.Y. June 21, 2018) (appointing group that "decide[d] upon a dispute resolution mechanism in the unlikely event [they] are not able to reach consensus on any issue").[4]

---

[4] Mr. West's cited authority is inapposite. *City of Monroe Employees' Retirement System v. Hartford Financial Services Group, Inc.* held that a group of two sophisticated investors "has been approved by this and other courts, and we see no reason that such a pairing would be counter to the PSLRA." 269 F.R.D. 291, 294-96 (S.D.N.Y. 2010). *In re Petrobras Sec. Litig.* involved "wholly artificial groupings" of unrelated members represented by multiple law firms. 104 F. Supp. 3d 618, 622-23 (S.D.N.Y. May 17, 2025). *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) addressed an unrelated group that provided "no

### 2.    Iron Workers is not "the sole institutional movant"

Iron Workers is the remaining movant with the smallest financial interest. Its lead argument—that it should be appointed Lead or Co-Lead Plaintiff because it is "the sole institutional movant"—is wrong on the facts. ECF No. 59 at 1. Ever Capital is also "a sophisticated institutional investor" that is a "licensed securities firm organized as a public limited company." ECF Nos. 43 at 2; 44-1 at ¶3. Iron Workers does not claim that Ever Capital is not an "institutional movant"—Iron Workers simply has the facts wrong.

### 3.    Ever Capital and Ms. Román Declara Can Assert Securities Act Claims

Iron Workers also claims that it is the only movant that has standing to pursue Securities Act claims because it purchased shares "directly" pursuant to the registration statement in Fermi's IPO. *See* ECF No. 59 at 5-8. But the Class is defined to include purchasers of shares that are "traceable" to the IPO, not just those that bought "directly" in the IPO. *See* ECF No. 1 ¶1.

Shares are "traceable" to the IPO when the only shares in the open market are those issued pursuant to the IPO. *In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 532 (E.D.N.Y. Mar. 28, 2025) (shares traceable when "the only [] securities in the market at the time [plaintiff] purchased [] were [] shares [] issued pursuant and traceable to the Registration Statement").

Here, the IPO took place on October 1, 2025, and Ever Capital and Ms. Román Declara bought shares on November 3, 4, 5 and 7, 2025 that are traceable to the IPO, and suffered damages on those purchases. *See* ECF No. 44-3 at 4, 6. Ever Capital and Ms. Román Declara therefore have standing under the Securities Act because their purchases are "traceable to the particular registration statement alleged to be false or misleading." *See Arqit*, 774 F. Supp. 3d at 531.

---

evidentiary support attesting to its ability to work together . . . [or] whether a pre-litigation relationship existed").

Iron Workers contends, however, that Ever Capital and Ms. Román Declara cannot trace to the IPO claiming that new shares entered the market. *See* ECF No. 59 at 6-8. Once again, Iron Workers has the facts wrong. Iron Workers points to an S-8 that Fermi filed with the SEC on October 17, 2025 registering shares under the Company's Long Term Incentive Plan ("LTIP"). Iron Workers then ***assumes*** that the filing of the S-8 meant those shares were issued, sold and entered the market. The S-8 only says shares "***may*** be issued" and "***may*** be delivered" in the future. ECF No. 60-2 at 4. In fact, shares for the 2025 LTIP must first be awarded, then vested, and finally sold before they enter the market. *See id.*

Iron Workers provides zero evidence supporting that new shares entered the market prior to Ever Capital and Ms. Román Declara's purchases. Accordingly, Ever Capital and Ms. Román Declara can trace and have standing to assert Securities Act claims. *See Arqit*, 774 F. Supp. 3d at 531 (rejecting "faulty premise that the operative event for purposes of determining traceability is the issuance of the registration statement. Not so. Rather, the relevant event is the entrance into the market of securities issued pursuant to a [] registration statement").[5]

Iron Workers implicitly acknowledges the weakness of its arguments because, in the alternative, it seeks to be appointed Co-Lead Plaintiff. *See* ECF 59 at 8-9. There is no need to "fracture the leadership" with an additional Co-Lead Plaintiff and Co-Lead Counsel. *Manchin v. PACS Group, Inc.*, 2025 WL 460775, at *4 (S.D.N.Y. Feb. 11, 2025). Ever Capital and Ms. Román Declara can represent the entire class.

---

[5] Even if Ever Capital and Ms. Román Declara lacked standing for Securities Act claims, it is black-letter law that a Lead Plaintiff need not have standing on every claim. The Lead Plaintiff can add additional plaintiffs later in the case, if necessary. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004) ("it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim," and that the PSLRA "does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

Dated: March 27, 2026

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

 */s/ Javier Bleichmar*
Javier Bleichmar
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (212) 789-2303
Facsimile: (415) 445-4020
amccall@bfalaw.com

*Counsel for Proposed Lead Plaintiff Ever Capital Investments S.V., S.A. and Maria Patricia Román Declara, and Proposed Lead Counsel for the Putative Class*

11

## <u>CERTIFICATION OF WORD-COUNT COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 3,595 according to the word-processing system used to prepare the document.

Dated: March 27, 2026                                   */s/ Javier Bleichmar*
                                                                      Javier Bleichmar